**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Mei–Fen CHEN, Defendant–Appellant.**

**No. 89–2659.**

United States Court of Appeals,
Fifth Circuit.

Sept. 18, 1990.

George McCall Secrest, Jr., Houston, Tex., for defendant-appellant.

Mervyn Hamburg, Atty., Appellate Section, Crim. Div., Dept. of Justice, Washington, D.C., Frances H. Stacy, Asst. U.S. Atty., Henry R. Oncken, U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before GEE, POLITZ, and BARKSDALE, Circuit Judges.

BARKSDALE, Circuit Judge:

Convicted of knowingly maintaining a place for the purpose of distributing and using a controlled substance (count one) and knowingly renting property for the purpose of unlawfully storing, distributing and using a controlled substance (count two), in violation of 21 U.S.C. § 856, Mei–Fen Chen (Chen) was sentenced to imprisonment for thirty months on count one and probation on count two, and the property forming the subject matter of the counts was forfeited.[1] Chen challenges the district court's use of a deliberate ignorance charge for both counts. Because we hold that the charge was improper for count one, we REVERSE and REMAND on that count, § 856(a)(1), and AFFIRM as to count two, § 856(a)(2), and the forfeiture.[2]

## I.

Chen acquired the Della Motel in 1979 and operated it into the late 1980's. During this period, the neighborhood surrounding the motel deteriorated; and the motel became an area for drug traffickers. They sold drugs in the motel parking lot, as well as occupying motel rooms and storing and selling drugs there. These activities were described at trial by an undercover police officer who participated in the investigation of drug activities at the motel from 1981 to 1985. He testified that he made purchases of drugs in both the motel parking lot and the motel rooms.

Another undercover officer testified that in July 1987, he walked into the motel office and asked Chen where he could purchase cocaine and that Chen told him he could go to almost any room and pointed out a man in the parking lot.

In August 1987, federal and local drug enforcement agents executed a warrant to search the motel. Several tenants were arrested, and drugs and drug paraphernalia were discovered in the motel rooms. A Drug Enforcement Agency Agent testified that no narcotics or paraphernalia were discovered in the office or residence in the motel of Chen or her family. In a locked closet upstairs, close to but outside Chen's living quarters, the agents did discover a coffee jar that contained six packets of cocaine and a prelude tablet. The items were within an envelope marked with the words "Gwen" and "105."[3]

Four former tenants of the motel testified at trial; all four had criminal records for drug related offenses. While all four resided at the motel during various time periods, three were residents during both 1986 and 1987 and one during 1987.[4] One testified that she did not know anyone at the Della motel during 1986 and 1987 who was not involved in selling drugs; that no

1. 21 U.S.C. § 856 provides:
   (a) Except as authorized by this title, it shall be unlawful to—
   (1) knowingly open or maintain any place for the purpose of manufacturing, distributing, or using any controlled substance;
   (2) manage or control any building, room, or enclosure, either as an owner, lessee, agent, employee, or mortgagee, and knowingly and intentionally rent, lease, or make available for use, with or without compensation, the building, room, or enclosure for the purpose of unlawfully manufacturing, storing, distributing, or using a controlled substance.
   (b) Any person who violates subsection (a) of this section shall be sentenced to a term of imprisonment of not more than 20 years or a fine of not more than $500,000, or both, or a fine of $2,000,000 for a person other than an individual.

2. 21 U.S.C. § 853(a) provides that "[a]ny person convicted of a violation of [§ 856] punishable by imprisonment for more than one year shall

forfeit to the United States, irrespective of any provision of State law— ... (2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation...." Chen was sentenced to three years imprisonment on count two, with the judge imposing probation.

3. Room 105 was occupied by Gwendolyn Nelms before her arrest on drug charges. Although Chen's testimony was somewhat equivocal, the jury could have inferred that Chen and her family were the only ones with access to this closet.

4. The time period in the indictment is "[f]rom an unknown date but beginning at least on or about October 27, 1986, to on or about August 13, 1987." October 27, 1986, is the effective date of § 856.

one ever got thrown out of the motel for selling drugs, only if they failed to pay rent.

The tenants testified that they stayed at the motel because, as one stated, it "was a place where all drug users hung out" in the area and "you [were] kind of protected there." Another testified that the motel "was nicknamed the shooting gallery" and "[a] shooting gallery is just a term for the activity that goes on there." The tenants stated that Chen never told them to cease their drug activities even after they returned from prison for drug offenses. They maintained that Chen knew they were involved in drug trafficking and testified as follows:

    ★ Chen had witnessed drug transactions and drug use in the motel rooms.

    ★ Chen alerted tenants when she became aware that law enforcement officers planned to search certain rooms.

    ★ Chen would encourage the tenants to make drug sales so that their rent could be paid.

    ★ Chen stored drugs and drug proceeds for the tenants.

    ★ Chen loaned money to the tenants to purchase drugs for resale.

Chen testified, denying that she was aware that drug transactions were taking place in her motel. She admitted seeing syringes in the parking lot but stated she believed they came from a nearby hospital. She maintained that she had never seen drugs being used or sold in the rooms and did not remember the visit of the undercover agent asking where he could get cocaine. She stated that she was unaware of the items found in the storage closet and denied the other events related by the tenants. Other witnesses testified as to Chen's reputation for honesty and of her good character.

The government then called two Houston police officers in rebuttal. One testified that he had made more than sixty visits to the Della Motel and had helped to execute search warrants there. He stated that the keys to the rooms given to the police by Chen often would not work and as a result, doors had to be broken. The other testified

that while he was in an informant's room, an "oriental lady" telephoned the room to warn that the police were coming.

Chen was indicted for (1) "knowingly maintain[ing] a place, to wit, the Della Motel ... for the purpose of distributing and using a controlled substance," 21 U.S.C. § 856(a)(1) and (b); and (2) "while managing and controlling a building, to wit, the Della Motel ... as an owner, agent, employee, and mortgagee, did knowingly and intentionally rent, lease, and make available for use, for compensation, said building for the purpose of unlawfully storing, distributing, and using a controlled substance," 21 U.S.C. § 856(a)(2) and (b). Chen was not charged with *opening* the motel for the purpose of distributing a controlled substance, another basis for an offense under § 856(a)(1), because the Della was not originally opened for that purpose; rather, the drug activity at the Della was at least partially a result of the deterioration of the neighborhood around the Della.

## II.

    In assessing Chen's challenge to the deliberate ignorance instruction, we must, of course, review the instructions in their totality and the jury's verdict; in so doing, we must view the evidence in the light most favorable to the government. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Munoz–Fabela*, 896 F.2d 908, 911 (5th Cir.), *petition for cert. filed*, No. 89–2024 (June 19, 1990). "[T]his circuit's standard of review ... requires us to uphold a jury's verdict unless that verdict is based upon record evidence [on] which no rational trier could have found guilt beyond a reasonable doubt." *United States v. Smith*, 890 F.2d 711, 712 (5th Cir.1989); *see also Munoz–Fabela*, 896 F.2d at 911. And, the standard of review for the jury instructions "is whether the court's charge, as a whole, is a correct statement of the law and whether it clearly instructs jurors as to the principles of law applicable to the factual issues confronting them." *United States v. Stacey*, 896 F.2d 75, 77 (5th Cir.

1990) (quoting, *United States v. August,* 835 F.2d 76, 77 (5th Cir.1987)).

▉▉▉] To convict Chen under § 856(a)(1), the jury had to find that Chen (1) knowingly (2) maintained the Della Motel (3) for the purpose of distributing and using any controlled substance. *United States v. Onick,* 889 F.2d 1425, 1431 (5th Cir.1989). To convict her under § 856(a)(2), the jury had to find that Chen (1) managed or controlled the Della Motel (2) either as an owner, lessee, agent, employee or mortgagee and (3) knowingly and intentionally rented, leased or made available for use for compensation, the building for the purpose of unlawfully storing, distributing and using a controlled substance. *Id.* at 1431, n. 1.

At trial, the court, in part, instructed the jury as follows:

18. An act is done "willfully" or "intentionally" if done voluntarily and purposely with the intent to do something the law forbids, that is, with the purpose either to disobey or to disregard the law.

An act is done "knowingly" if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason. The purpose of adding the word "knowingly" is to insure that no one will be convicted for an act done because of mistake or accident, or other innocent reason.

19. Actual knowledge on the part of the defendant that she was renting, leasing, or making available for use the building, room, or enclosure for the purpose of unlawfully storing, distributing, or using a controlled substance is an essential element of the offense charged. You may not find the defendant guilty unless you find beyond a reasonable doubt that she knew that she was renting, leasing, or making available for the use the rooms for the purpose of unlawfully storing, distributing, or using a controlled substance. It is not sufficient to show that the defendant may have suspected or thought that the rooms were being used for such purposes.

20. [Deliberate Ignorance] The element of knowledge may be satisfied by inferences drawn from proof that the defendant deliberately closed her eyes to what would otherwise have been obvious to her. A finding beyond a reasonable doubt of a conscious purpose to avoid enlightenment would permit an inference of knowledge. Stated another way, the defendant's knowledge of a fact may be inferred from willful blindness to the existence of the fact.

It is entirely up to you whether you find any deliberate closing of the eyes, and the inferences to be drawn from any such evidence. A showing of negligence or mistake is not sufficient to support a finding of willfulness or knowledge.

Although the district judge gave other instructions on the elements of the offense for each count (§ 856(a)(1) and (a)(2)), he did not give separate instructions on the knowledge component for each offense under § 856, rather the above knowledge instructions (18–20), including the complained of deliberate ignorance instruction, applied to both counts. The judge did not specifically instruct the jury on the meaning of the *for the purpose of* requirement contained in both subsections.[5]

Defense counsel timely objected to several instructions, including the one in issue—20, at the charge conference. Defense counsel contended that

on instruction number twenty, ... closing your eyes ... is really inappropriate because you couldn't close your eyes to something—you couldn't have willful blindness to the existence of a fact when what you're accused of is operating something for the purpose of doing something.

The district judge denied the objections.

Chen contends that it was reversible error to give the deliberate ignorance charge (number 20), contending that (1) the statute requires proof of two mental elements, knowledge and purpose; (2) the government's theory was *actual* knowledge, not willful blindness; and (3) at a minimum, a

---

**5.** As discussed *infra,* it is of some interest how often the very word "purpose" was used in the charge, for example, to define or explain other terms, as in instruction 18 above.

balancing instruction should have been given with the deliberate ignorance charge.

### A.

The first, and primary, issue turns on whether the phrase "for the purpose of" in both subparts of § 856(a) precludes, without more, use of the instruction. The government agrees both that the offense requires two mental elements—knowledge and purpose—and that the jury had to find that Chen maintained (§ 856(a)(1)) or operated (§ 856(a)(2)) the motel with the *specific purpose* of unlawfully using, storing, or distributing a controlled substance, and not merely that she "operated a motel where drug activity was rampant."

The government admitted at oral argument that the deliberate ignorance instruction applied only to the knowledge component, not purpose. It asserts, however, that the additional element of purpose does not alter the propriety of the deliberate ignorance instruction as to the knowledge component. It contends that this court has upheld the deliberate ignorance charge in prosecutions under § 841, which requires the additional element of specific intent; and that "[n]o reason exists to differentiate a § 856 prosecution from one brought under § 841(a)(1) or § 952 insofar as the propriety of a deliberate ignorance charge is concerned, as long as evidence was adduced at trial that pointed in the direction of deliberate ignorance."[6]

Section 856 was part of comprehensive drug legislation passed in October 1986, designed

to strengthen Federal efforts to encourage foreign cooperation in eradicating illicit drug crops and in halting international drug traffic, to improve enforcement of Federal drug laws and enhance interdiction of illicit drug shipments, to provide strong Federal leadership in establishing effective drug abuse prevention and education programs, to expand Federal support for drug abuse treatment and rehabilitation efforts, and for other purposes.

H.R. 5484, 99th Cong., 2nd Sess., 132 Cong. Rec. S13779 (daily ed. September 26, 1986). Section 856 was enacted to "outlaw[ ] operation of houses or buildings, so-called 'crack houses', where 'crack', cocaine and other drugs are manufactured and used." *Id.*[7]

This court has only had one occasion to consider § 856. In *United States v. Onick*, it affirmed a conviction under the statute, finding that there was sufficient evidence to support the conviction. 889 F.2d at 1431. There are few federal decisions that discuss the statute; and none are particularly helpful to our analysis.[8]

### 1.

In order to resolve whether the deliberate ignorance instruction could be used with either count, we are called upon to engage in construction of § 856. Of course, a criminal statute is to be strictly construed; and to the extent it is ambiguous, the "time-honored" rule of lenity applies:

---

6. The government did not make a harmless error argument in its brief, and first conceded at oral argument that the harmless error standard would not apply to the jury instruction in issue, then stated that it could make such an argument. In any event, an erroneous instruction that pertains to an element of the offense that was in issue at the trial is harmless error only "if the evidence of guilt is so overwhelming that the error could not have contributed to the jury's decision to convict." *Healy v. Maggio,* 706 F.2d 698, 701 (5th Cir.), *cert. denied,* 464 U.S. 984, 104 S.Ct. 428, 78 L.Ed.2d 362 (1983). Based on our analysis of § 856(a)(1) and the evidence adduced at trial, the harmless error doctrine is not applicable in this instance.

7. In 1989, an amendment was introduced to allow civil actions against individuals who violated § 856 (the amendment has not been adopted). The analysis accompanying the amendment stated that § 856 "covers places such as 'shooting galleries' and 'crack houses'." S.1972, 101st Cong., 1st Sess., 135 Cong.Rec. S16723, S16755 (daily ed. November 21, 1989).

8. This appears to be an issue of first impression. In *United States v. Matos,* 905 F.2d 30 (2nd Cir.1990), the Second Circuit upheld a conscious avoidance jury instruction in a case involving charges under §§ 846, 841, 812, 853 and 856. However, the court did not discuss the instruction as it applied to each offense.

The purposes underlying the rule of lenity [are] to promote fair notice to those subject to the criminal laws, to minimize the risk of selective or arbitrary enforcement, and to maintain the proper balance between Congress, prosecutors, and courts....

*United States v. Kozminski,* 487 U.S. 931, 108 S.Ct. 2751, 2764, 101 L.Ed.2d 788 (1988). However, the rules of lenity and strict construction are limited.

The canon in favor of strict construction [of criminal statutes] is not an inexorable command to override common sense and evident statutory purpose.... Nor does it demand that a statute be given the 'narrowest meaning'; it is satisfied if the words are given their meaning in accord with the manifest intent of the lawmakers.

*United States v. Rojas,* 671 F.2d 159, 163 (5th Cir. Unit B 1982) (quoting *United States v. Moore,* 423 U.S. 122, 145, 96 S.Ct. 335, 347, 46 L.Ed.2d 333 (1975)).

■ More to our purposes, "[a] fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979). "[W]e start with [the statute's] plain words without pausing to consider whether a statute differently framed would yield results more consistent with fairness and reason." *Garcia v. Gloor,* 618 F.2d 264, 268 (5th Cir.1980), *cert. denied,* 449 U.S. 1113, 101 S.Ct. 923, 66 L.Ed.2d 842 (1981).

■ Keeping these principles in mind, we turn to § 856(a). We must determine whether the "purpose" requirement in § 856(a)(1) applies to the person who knowingly opens or maintains a place (*i.e.,* that person must have the express purpose that drug activity take place there), or whether the purpose relates instead to what activity takes place there, caused by others. If the purpose requirement applies to the person who "opens or maintains," then the deliberate ignorance instruction, which the government admits applies only to the knowledge component, would not comport with common sense. It is untenable to believe that a person can be deliberately ignorant on the one hand and yet still have the specific purpose to engage in drug activities on the other. Or, as Chen states,

it is strictly incumbent upon the government to prove beyond a reasonable doubt *not* that a defendant knowingly maintained a place *where* controlled substances were used or distributed, but rather, that a defendant knowingly maintained a place *for the specific purpose of distributing or using a controlled substance.* (Emphasis in original.)

Under Chen's reasoning, she could not be convicted under § 856(a)(1) unless she "maintained" the motel for the specific purpose that drugs be distributed there.

The jury recognized this distinction. During deliberations, the jury, by note, asked whether the indictment

require[d] proof that the Defendant knowingly maintained the Della Hotel [sic] for the purpose of distributing and using a controlled substance that she was selling; or, that the Della Hotel [sic] was maintained as an environment from which the drug activity took place and the owner profited.

The jury was concerned with the very issue before us—under § 856(a)(1) did Chen have to possess the requisite purpose, or was it sufficient for others to possess it. The district judge advised the jury that the answer to their question was provided in jury instructions 14 and 15. However, these instructions only repeated count one of the indictment (§ 856(a)(1)) and stated the elements of the offense.

"Purpose" is a word of common and ordinary, well understood meaning; it is "[t]hat which one sets before him to accomplish; an end, intention, or aim, object, plan, project." Black's Law Dictionary 1112 (5th ed. 1979). Or, "purpose" is the "object toward which one strives or for which something exists; goal; aim ... intention ... determination; resolution." The American Heritage Dictionary of the English Language 1062 (4th ed. 1970). *See also, State v. Horne,* 19 Conn.App. 111, 562 A.2d 43, 57 (1989), *rev'd on other grounds,*

215 Conn. 538, 577 A.2d 694 (1990) (purpose is synonymous with object and intent in robbery statute which required actor to threaten force "for the purpose of" compelling the owner to deliver property); *State v. Schweppe*, 237 N.W.2d 609, 614 (Minn. 1975) ("[p]urpose ... means aim, objective, or intention" in criminal statute requiring actor to utter threat with the purpose of terrorizing another).

In examining the plain language of the statute, we find that the statute is unambiguous; the phrase *for the purpose of* applies to the person who opens or maintains the place for the illegal activity. If other synonyms for purpose are inserted in its place, our analysis is more clear; for example the statute could read, that it shall be unlawful—

(1) to knowingly open or maintain any place for the *objective* of distributing ...; *or*

(2) to knowingly open or maintain any place for the *intention* of using ...; or

(3) to knowingly open or maintain any place for the *aim* of manufacturing....

In order to find that the *purpose* requirement did not apply to the person who knowingly maintains the place, we would have to twist the clear and plain language of the statute. This we cannot do.[9]

Furthermore, any other interpretation would render § 856(a)(2) essentially superfluous. "It is well established that a statute should be construed so that each of its provisions is given its full effect; interpretations which render parts of a statute inoperative or superfluous are to be avoided." *Duke v. University of Texas*, 663 F.2d 522, 526 (5th Cir.1981); *see also Weinberger v. Hynson, Westcott and Dunning,*

*Inc.,* 412 U.S. 609, 633, 93 S.Ct. 2469, 2485, 37 L.Ed.2d 207 (1973) (interpretation should not render clause in statute superfluous).

Based on our reading of the statute, § 856(a)(2) is designed to apply to the person who may not have actually opened or maintained the place for the purpose of drug activity, but who has knowingly allowed others to engage in those activities by making the place "available for use ... for the purpose of unlawfully" engaging in such activity. Therefore, under § 856(a)(2), the person who manages or controls the building and then rents to others, need not have the express purpose in doing so that drug related activity take place; rather such activity is engaged in by others (*i.e.,* others have the purpose). *See United States v. Burnside*, 855 F.2d 863 (9th Cir. 1988) (Table) (text in WESTLAW) ("Section 856[ (a)(2) ] ... requires the ... elements of control of a building and *knowingly allowing someone else to use it.*) (emphasis added).

Under a plain, commonsense reading of § 856(a)(1), we conclude that the deliberate ignorance instruction cannot be used for that subsection. One cannot be deliberately ignorant (in order to convict for the knowledge element) and still have the purpose of engaging in illegal drug activities. Therefore the instruction was inappropriate for an offense which requires a specific purpose by the defendant.[10]

We find our decision especially appropriate, because the use of the instruction should be limited to certain circumstances, as discussed in Part II.A.2. As the Ninth Circuit cautioned, a "court can properly find willful blindness only where it can

9. Our research reveals that at least 16 federal criminal statutes use the combination of "knowingly" and "for the purpose of." A review of these shows that the purpose requirement clearly goes to the "actor" in the statute, the one who has the knowledge. For example, *see* 18 U.S.C. § 1002 (possession of false papers to defraud United States); 18 U.S.C. § 1158 (counterfeiting Indian Arts and Crafts Board trademark); 18 U.S.C. § 1461 (mailing obscene or crime-inciting matter); 18 U.S.C. § 1722 (false evidence to secure second-class rate); 18 U.S.C. § 2251(b) (sexual exploitation of children).

10. The government contended at oral argument that the purpose requirement can be read to apply to Chen as an aider and abettor under 18 U.S.C. § 2, which provides that "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." 18 U.S.C. § 2 was not included in the indictment, the jury was not instructed on this theory and the government did not argue it in its brief. Accordingly, we express no opinion on whether such an analysis would apply to the facts of this case.

almost be said that the defendant actually knew." *United States v. Jewell,* 532 F.2d 697, 704 (9th Cir.), *cert. denied,* 426 U.S. 951, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976) (quoting G. Williams, Criminal Laws § 57 at 157 (2d ed. 1961)). The Model Penal Code provides that when "knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person is *aware of a high probability* of its existence, unless he actually believes that it does not exist." § 2.02(7) (emphasis added). *See also* LaFave & Scott, *Substantive Criminal Law* § 3.5 at 307–8 (1986).

### 2.

■ As discussed above, § 856(a)(2) does not require the person who makes the place available to others for drug activity to possess the purpose of engaging in illegal activity; the purpose in issue is that of the person renting or otherwise using the place. Accordingly, a deliberate ignorance instruction may be appropriate for § 856(a)(2). One could try to be deliberately ignorant of others' purpose to engage in drug activity.

We have upheld deliberate ignorance instructions if there is sufficient evidence to support the instruction. *United States v. de Luna,* 815 F.2d 301, 302 (5th Cir.1987). Moreover, the instruction is often properly given in prosecutions under the drug importation statute, 21 U.S.C. § 841(a)(1) and § 952. *United States v. Rada–Solano,* 625 F.2d 577, 579 (5th Cir. Unit B), *cert. denied,* 449 U.S. 1021, 101 S.Ct. 588, 66 L.Ed.2d 482 (1980) (§§ 841(a)(1) and 952(a)); *United States v. Batencort,* 592 F.2d 916, 917–18 (5th Cir.1979) (§§ 841(a)(1) and 952(a)). Both of these sections require proof of the elements of possession and knowledge.

■ Chen's contention raises the question of whether the requisite knowledge under § 856(a)(2) can be established by proof of deliberate ignorance. "The term as used denotes a conscious effort to avoid positive knowledge of a fact which is an element of an offense charged, the defendant choosing to remain ignorant so he can plead lack of positive knowledge in the event he should be caught." *United States v. Restrepo–Granda,* 575 F.2d 524, 528 (5th Cir.1978), *cert. denied,* 439 U.S. 935, 99 S.Ct. 331, 58 L.Ed.2d 332 (1978).

In *Restrepo–Granda,* appellant testified and denied any knowledge of cocaine found in his luggage and was convicted of violating drug importation statutes. This court upheld the trial court's decision to give the deliberate ignorance instruction:

> On the whole the instruction given to the jury on deliberate ignorance incorporated a correct statement of law and was sufficient to apprise the jury that the appellant could be found to have acted knowingly if: (1) he knew he was importing cocaine or a controlled substance, or (2) he believed he was importing a controlled substance and through willful blindness failed to confirm that belief.

575 F.2d at 529. Here the trial judge instructed the jury that it could find Chen acted knowingly if (1) she had actual knowledge that she was renting, leasing, or making available for use the building, room, or enclosure for the purpose of unlawfully storing, distributing, or using a controlled substance, or (2) Chen deliberately closed her eyes to what otherwise would have been obvious to her—"willful blindness." The trial court also instructed that a showing of negligence or mistake was insufficient to support a finding of knowledge.

■ We must first determine whether there was sufficient evidence to warrant the deliberate ignorance instruction for the knowledge component of § 856(a)(2). The evidence indicated that Chen consciously avoided becoming aware of the drug related activities occurring incessantly at the Della Motel. Despite the overwhelming evidence at trial concerning the drug related activities at the motel, Chen maintained that she was unaware of it and made the following statements:

    \* That she saw people "talking" in the parking lot and she "thought maybe they [sic] doing something" and they "look[ed] suspicious";

\* That despite all the visits by the police with search and arrest warrants she would "never ask" why they were there even though she was curious, and that the police never answered her question concerning their need for the motel room keys and "it is not for me to ask";

\* That she never left her office to witness what the police were doing during their visits to the Della Motel;

\* That when the police were there, residents would call her in the office to ask the police were at the motel, but she "never ask[ed] them" why they were concerned about the police; and

\* That before she joined a neighborhood improvement association she did not "pay attention" to drug problems in the neighborhood.

Chen's testimony coupled with the other facts introduced at trial presented a "sufficient predicate to allow the jury to consider whether the defendant either knew or had consciously avoided learning" about the drug related activities at the motel. *Rada–Solano*, 625 F.2d at 579. We find that there were sufficient "facts that point in the direction of deliberate ignorance." *United States v. Batencort*, 592 F.2d 916, 918 (5th Cir.1979), *quoting*, *United States v. Murrieta–Bejarano*, 552 F.2d 1323, 1325 (9th Cir.1977). "The record leaves no doubt that a 'deliberate ignorance' instruction was warranted here." *Id.*

All the circumstances surrounding the motel during the relevant time period support either a finding of actual knowledge or willful blindness on the part of Chen resulting in "a sufficient basis on which to allow the jury to consider either actual knowledge or deliberate ignorance thereof." *Rada–Solano*, 625 F.2d at 580.

Based on our above discussion, we hold that the phrase *"for the purpose of"* contained in § 856(a)(2) of the statute does not preclude a deliberate ignorance instruction for the knowledge element of that subsection; and that the evidence was sufficient to support the charge for it.[11]

### B.

Chen contends also that the instruction was improper because the government's case was based on actual knowledge; that the government's case, if believed, was that she had actual direct knowledge and the evidence did not support the "middle ground" of a deliberate ignorance instruction. Even if the government's case was actual knowledge, the defendant's testimony raised the issue of deliberate ignorance. Needless to say, the court is required to "instruct the jury on all aspects of a case in order for them to reach a fair and proper verdict." *United States v. Leon*, 679 F.2d 534, 541 (5th Cir.1982). The trial court determined that the charge was supported by the evidence, and it had a duty to give an instruction in accordance with the evidence presented.

### C.

Finally, Chen contends that the trial court erred in not instructing the jury that she could not be convicted if she actually believed that she did not operate the Della Motel for the purpose of distributing or using a controlled substance. In essence, Chen claims that the trial court should have "balanced" the deliberate ignorance instruction with this caveat. Chen objected to the deliberate ignorance instruction but did not request the balancing instruction. Regardless of whether we review this issue under either a plain or harmless error standard, we find that the trial court adequately instructed the jury on the elements of the offense. *See United v. Garza*, 754 F.2d 1202, 1210 (5th Cir. 1985). The deliberate ignorance instruction must be considered in context with the other instructions to the jury. *See United States v. McCoy*, 539 F.2d 1050, 1063 (5th

---

**11.** Chen's argument is that this instruction should be limited to offenses which only proscribe *knowing* conduct and not to offenses involving a *specific intent* or *specific purpose*. We are not persuaded that the inclusion of this phrase *necessarily* prevents a deliberate ignorance charge. Section 841(a)(1) requires *specific intent* to distribute a controlled substance, *United States v. Kaufman*, 858 F.2d 994, 1000 (5th Cir.1988), and this court has upheld the use of the charge for this offense. *Rada–Solano*, 625 F.2d at 579; *Batencort*, 592 F.2d at 917–18.

Cir.1976), *cert. denied,* 431 U.S. 919, 97 S.Ct. 2185, 53 L.Ed.2d 230 (1977).

The jury was instructed that it could "not find the Defendant guilty unless [it found] beyond a reasonable doubt that she knew she was renting...." and "[i]t [was] not sufficient to show that the Defendant may have suspected or thought that the rooms were being used for such purpose." The court further emphasized that mere negligence or mistake would not suffice to satisfy knowledge. These instructions were adequate to inform the jury that Chen could not be convicted if she knew that she was *not* operating her motel for such purpose. "A conviction will not be reversed because of a trial court's failure to give a requested instruction if the charge taken as a whole, accurately reflects the legal issues and does not allow the jury to convict on an offense not charged in the indictment." *Garza,* 754 F.2d at 1210. As noted, Chen did not even request the balancing instruction.

Here the "court's charge, as a whole, is a correct statement of the law and ... clearly instruct[ed] jurors as to the principles of law applicable to the factual issues confronting them." *United States v. August,* 835 F.2d 76, 77 (5th Cir.1987). Chen's concern was adequately addressed by the jury instructions as a whole.

### III.

The conviction on count one is REVERSED and the matter is REMANDED for further proceedings consistent herewith; the judgment is AFFIRMED in all other respects.