925 F.2d 1466
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Roberta A. TRUSS, Defendant-Appellant.
 No. 30-3502.
 United States Court of Appeals, Sixth Circuit.
 Feb. 11, 1991.
 
 Before KEITH and MILBURN, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant-appellant, Roberta A. Truss, appeals her conviction for knowingly and intentionally controlling and making available a place for the purpose of unlawfully storing and distributing a Schedule II substance in violation of 21 U.S.C. Sec. 856(a)(2) and 18 U.S.C. Sec. 2. For the following reasons, we affirm the judgment of the district court.
 
 I.
 
 2
 Based on citizens' complaints about apparent drug activity at 1770 S. 20th Street, Columbus, Ohio, the Columbus Police Department Narcotics Team hired a confidential informant, George Willis Jones, to make controlled purchases of "crack" from the premises. The first controlled buy was made by Jones on August 8, 1989. He purchased .250 grams of crack from a black male through the kitchen door of apartment B at the back of the building. Apartment B was leased to appellant and was within 1000 feet of Lincoln Park Elementary School. Informant Jones unsuccessfully attempted to make a buy on August 10th, 1989. A second controlled buy was successfully carried out on August 11, 1989 at the front door of apartment B where Jones purchased .284 grams of cocaine from a black male.
 
 
 3
 Soon thereafter, the narcotics officers executed a search warrant at 1770 South 20th Street, Apartment B. Three young children were found alone at the apartment. Two were appellant's children--Antonio, age 12 and Ricardo, age 9. A six-year-old female child was also present.
 
 
 4
 In the bedroom of appellant's 19-year-old son, Donald Truss, the police found various instruments and paraphernalia used in the manufacture and packaging of "crack" cocaine. In another bedroom closet the officers found $15,890.00 in currency and seven bags of cocaine containing 191.75 grams of cocaine. Appellant Truss was arrested when she arrived at the premises during the search.
 
 
 5
 On October 19, 1989, the grand jury returned an indictment against appellant, Roberta Truss, and her son, Donald Truss. Count one charged both defendants with conspiracy to maintain a place to distribute cocaine base and to possess with intent to distribute cocaine base within 1,000 feet of a public elementary school in violation of 21 U.S.C. Sec. 846. Count two alleged that defendants possessed with intent to distribute 191.75 grams of cocaine within 1,000 feet of a public elementary school in violation of 21 U.S.C. Secs. 841(a)(1) and 845(a) and 18 U.S.C. Sec. 2. Count three alleged that defendants did knowingly and intentionally control and make available for use 1770 S. 20th Street, Apartment B, Columbus, Ohio, for the purpose of unlawfully storing and distributing cocaine in violation of 18 U.S.C. Sec. 2 and 21 U.S.C. Sec. 856(a)(2).
 
 
 6
 A jury trial was conducted on January 16, 17, and 18, 1990. At trial, George Jones, the confidential informant who had made the controlled buys, testified that he had not seen appellant when he purchased crack on August 8th, but that he did see her on August 10th, when he made an unsuccessful attempt to buy drugs. He stated that she came to the door and told him that drugs were not sold out of her apartment and not to come back.
 
 
 7
 Both of the narcotics officers, who had supervised informant Jones's controlled buys, testified that on August 8th Jones had told them that he had observed a heavy-set black woman in the kitchen from which the drugs were sold. The officers testified that Jones later told them that the woman he had seen was the same woman that they had arrested on August 11th.
 
 
 8
 The officers also testified that on August 10th, after Jones's unsuccessful attempt to buy, he told the officers that the same heavy-set black female had told him, "nothin's happen'n." According to the officers, such a response, in the terminology of the drug trade, means that drugs are not currently available. Although the testimony of the officers about the statements made to them by confidential informant Jones was hearsay, the testimony was not objected to and was before the jury.
 
 
 9
 Donald Truss refused to testify at his mother's trial, asserting his fifth amendment right not to incriminate himself.
 
 
 10
 Appellant testified on her own behalf, denying any knowledge of drug-related activity on her premises. She also presented witnesses who stated that she was at work on the evenings of August 9th and 10th when the informant came to her apartment. At the conclusion of her presentation, counsel made an oral motion for a judgment of acquittal based on insufficiency of evidence, which was denied. At the conclusion of the government's presentation and prior to the case being submitted to the jury, appellant renewed her motion, but it was again denied.
 
 
 11
 Appellant was found guilty on count three and not guilty on counts one and two. Co-defendant, Donald Truss, was found guilty on counts one and two and not guilty on count three.
 
 
 12
 After conviction on count three, appellant filed a motion for a new trial based on newly discovered evidence. The new evidence consisted of hearsay statements of two Truss family members, who alleged that Donald Truss told them that his mother did not know there were drugs in the house on the day of the raid. Appellant contended that these two witnesses could be called at a new trial to testify concerning Donald's statements and that the evidence was "newly discovered" as Donald did not make the alleged statements before trial. The motion was denied.
 
 
 13
 On June 1, 1990, appellant was sentenced to 21 months imprisonment on count three. Appellant timely filed a notice of appeal on June 1, 1990.
 
 II.
 
 14
 Appellant alleges that the district court erred in refusing to compel co-defendant, Donald Truss, to testify. Appellant's nineteen-year-old son, Donald, invoked his fifth amendment privilege against self-incrimination and refused to give evidence at both his mother's trial and during the hearing on the motion for a new trial.
 
 
 15
 Appellant cites two cases to support her contention that the sixth amendment right to compulsory process overrides a properly invoked fifth amendment privilege by a co-defendant. However, both the cases are inapposite. United States v. Silverstein, 732 F.2d 1338 (7th Cir.1984), cert. denied, 469 U.S. 1111 (1985), deals with the inadvertent abandonment of the fifth amendment privilege by a defense witness. In Silverstein, the seventh circuit affirmed a district court ruling protecting a defense witness's right not to incriminate himself by striking his prior testimony. Id. at 1344-45. In Rock v. Arkansas, 483 U.S. 44 (1987), an Arkansas trial court refused to allow a defendant to testify to details of a shooting which were hypnotically refreshed. The Supreme Court held that Arkansas' per se rule excluding all posthypnosis testimony infringes impermissibly on a criminal defendant's right to testify on his or her own behalf. Id. at 62. Rock, thus, stands for the proposition that a defendant must be allowed to testify on his or her own behalf, not that a co-defendant must be compelled to testify.
 
 
 16
 Co-defendant, Donald Truss, also refused to testify at the hearing on the motion for a new trial. The Truss family members' hearsay statements alleging that Donald had told them that his mother did not know there were drugs in the house on the day of the raid do not constitute "newly discovered evidence" for purposes of a new trial. We agree with the district court's determination that these statements would not be admissible at a new trial. They do not fall within the present sense impression exception to the hearsay rule found in Fed.R.Evid. 803(1). Also they would not be admissible under the residual hearsay exception in Fed.R.Evid. 803(24), because they were not made under circumstances indicating the trustworthiness of the statements. Even a statement made directly by a co-defendant who has been found guilty which exculpates the defendant is "of questionable reliability." United States v. O'Dell, 805 F.2d 637, 642 (6th Cir.1986), cert. denied, 484 U.S. 859 (1987).
 
 
 17
 For these reasons, the district court did not err in refusing to compel co-defendant, Donald Truss's, testimony or in denying a motion for a new trial.
 
 III.
 
 18
 Appellant next argues that the government's evidence is insufficient to support her conviction. The applicable standard of review requires the court to view the evidence in the light most favorable to the prevailing party, Glasser v. United States, 315 U.S. 60, 80 (1942), to determine whether the government proved all elements of the crime beyond a reasonable doubt. United States v. Connery, 867 F.2d 929, 930 (6th Cir.1989).
 
 
 19
 To convict appellant under Sec. 856(a)(2), the jury had to find that Truss (1) managed or controlled 1770 S. 20th Street, Apt. B, (2) either as an owner, lessee, agent, employee or mortgagee, and (3) knowingly and intentionally made available for use the apartment for the purpose of unlawfully manufacturing, storing, distributing or using a controlled substance. United States v. Chen, 913 F.2d 183, 187 (5th Cir.1990).
 
 
 20
 We believe that a reasonable jury could find that appellant knowingly made available for use a place to manufacture, store, distribute or use drugs. Beginning with the premise that appellant was the lessee of the apartment and lived there with her children, the jury first could infer that Truss managed and controlled the apartment. Second the jury could infer that in the course of daily living, she came across and knew about the drugs and drug paraphernalia found in two upstairs bedrooms. The bedroom of her 19-year-old son, Donald, contained a triple-beam scale on the floor at the foot of the bed next to several boxes of baking soda, spoons, a microwave oven, plastic baggies, and rubber bands. The baking soda was scattered on the floor near the microwave oven. All of this was visible at the time of the search through the open door of Donald Truss's bedroom, which opened onto a common hallway that led to other bedrooms and the second-floor bathroom. The jury could reasonably have found that appellant's testimony that her son always kept the door to his bedroom closed and that she never entered the bedroom not to be credible.
 
 
 21
 Appellant also alleged that she was unaware of the currency and cocaine found in the closet of another upstairs bedroom. Appellant testified that the bedroom was used by her nine-year-old son, Ricardo, and that she rarely went into the closet. Again a reasonable jury could have found this testimony not to be credible. The amount of money ($15,899.00) and drugs (191.75 grams of cocaine) found in the closet of one of her younger children's bedrooms gives rise to a reasonable inference that appellant knew of their presence in her apartment. See United States v. Onick, 889 F.2d 1425, 1431 (5th Cir.1989).
 
 
 22
 A conviction under Sec. 856(a)(2) does not require the person who makes a building, room or enclosure available to others for drug activity to possess the purpose of actively engaging in the manufacture, storage, distribution or use of drugs. Chen, 913 F.2d at 191. Appellant need only have knowingly and intentionally made her apartment available for the use of such activity. Therefore, it is not fatal to the government's case that the confidential informant did not testify at trial that he saw appellant in the kitchen when he made the first controlled buy.
 
 
 23
 Appellant presented an alibi defense, alleging that she was not present at her apartment on the night of August 10th, 1989, when the confidential informant alleged that he saw a lady and that she told him drugs were not sold from the apartment. Viewing this evidence in a light most favorable to the government, the jury could reasonably infer (1) that appellant spoke with the informant and was not telling the truth about her whereabouts because she knew of the illegal use of her premises; and (2) that she told the informant to leave because she did not trust him or want to distribute the cocaine herself.
 
 
 24
 For these reasons, we conclude that there was sufficient evidence to convict appellant of violating 21 U.S.C. Sec. 856(a)(2).
 
 IV.
 
 25
 Accordingly, for the foregoing reasons, the judgment of the district court is hereby AFFIRMED.