988 F.2d 124
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Carl HUERD, Defendant-Appellant.
 No. 91-30358.
 United States Court of Appeals, Ninth Circuit.
 Submitted Feb. 4, 1993.*
Decided Feb. 10, 1993.
 
 Appeal from the United States District Court for the Eastern District of Washington; No. CR-91-2064-AAM, Alan A. McDonald, District Judge, Presiding.
 E.D.Wash.
 AFFIRMED.
 Before TANG, KOZINSKI and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Carl Huerd appeals his jury conviction on one count of knowingly and intentionally making a building which he managed or controlled available for the purpose of unlawfully storing, distributing, or using a controlled substance, in violation of 21 U.S.C. § 856(a)(2). Huerd challenges jury instructions defining "knowledge" and "purpose," as those words are used in the statute. Huerd also attacks both the district court's decision to instruct the jury on deliberate ignorance and the court's phrasing of this instruction. We affirm.
 
 
 3
 * A
 
 
 4
 Contending that "the actual knowledge element ... is not otherwise provided in the Court's instruction," Huerd proposed to the district court an instruction taken substantially verbatim from United States v. Chen, 913 F.2d 183, 187 (5th Cir.1990). The district court did not adopt the proposed instruction.
 
 
 5
 On appeal, Huerd renews his contention that the district court did not adequately instruct the jury on the actual knowledge element. We reject this argument. The substance of Huerd's proposed instruction was covered by an instruction actually given the jury, Instruction 11. Like Huerd's proposed instruction, the actual instruction indicates that knowledge was an element of the offense to be proved by the government beyond a reasonable doubt. Furthermore, as with the proposed instruction, the actual instruction specifies that guilty knowledge pertains to "rent[ing], leas[ing], or ma[king] available for use, either with or without compensation, the building, room, or enclosure for the purpose of unlawfully manufacturing, storing, distributing, or using a controlled substance." Thus, there is no significant difference between the instruction on knowledge requested by Huerd and the instruction given the jury.[1]
 
 
 6
 Although Huerd's requested instruction on knowledge was adequately covered by Instruction 11, Huerd argues that the instruction defining the term "purpose," Instruction 15, "failed to provide the necessary language that the Defendant had 'knowledge' of the illegal 'purpose' of the Lopezes and others." Given that the language requested by Huerd was covered by Instruction 11, we see no defect in the jury instructions as a whole, regardless of whether Instruction 15 failed to reiterate the definition of guilty knowledge contained in Instruction 11. See United States v. Atkinson, 966 F.2d 1270, 1274 (9th Cir.1992) (jury instructions must be viewed as a whole when reviewing a claim of error relating to the instructions). In any event, Instruction 15 emphasizes that Huerd could only violate section 856(a)(2) if he "made his tavern available to those he knew would use or distribute a controlled substance." Thus, contrary to Huerd's contention, the instructions preclude a conviction based solely on the defendant's knowledge of prior illegal drug activity when he purchased the tavern.[2]
 
 B
 
 7
 There is another argument coupled with Huerd's contention that the district court erred by rejecting his proposed knowledge instruction. Huerd vaguely argues the jury instructions should have stated that knowledge of unlawful purpose means that the defendant knew of a particular person's illegal purpose and that knowledge of a clientele's general habits is not enough.
 
 
 8
 In the district court, Huerd made no objection and proposed no instruction relating to this argument. Accordingly, we review only for plain error; that is, "we inquire whether the alleged error was highly prejudicial and whether the error affected the substantial rights of the defendant." United States v. Bryan, 868 F.2d 1032, 1038 (9th Cir.), cert. denied, 493 U.S. 858 (1989).
 
 
 9
 Assuming that Huerd would have been entitled to an instruction along the lines suggested, we believe the instructions actually given sufficiently cover the point to avoid plain error. Instruction 16 cautioned the jury that it was not "sufficient to show that the defendant may have suspected or thought that the tavern was being used for the purpose of unlawfully distributing or using a controlled substance." Thus, generalized suspicions about the tavern's clientele would not suffice. Another instruction stated that "the purpose in issue is that of the person renting, leasing or otherwise using the place." (Emphasis added.) These instructions adequately convey that only a individualized knowledge of another's unlawful purpose suffices as guilty knowledge. Accordingly, we find no basis for reversal here.[3]
 
 II
 
 10
 * Huerd further objects to the district court's decision to instruct the jury on deliberate ignorance as a form of guilty knowledge. However, Huerd raised no such objection before the district court. Accordingly, we review only for plain error. See Bryan, 868 F.2d at 1038; United States v. Eaglin, 571 F.2d 1069, 1075 (9th Cir.1977) (reviewing decision to instruct on deliberate ignorance for plain error where defendant did not object to instruction at trial), cert. denied, 435 U.S. 906 (1978).
 
 
 11
 Instructing the jury on deliberate ignorance "enables the jury to deal with willful blindness, where a person suspects a fact, realizes its probability, but refrains from obtaining final confirmation in order to be able to deny knowledge if apprehended." United States v. Mapelli, 971 F.2d 284, 286 (9th Cir.1992). Such an instruction "should not be given in every case where a defendant claims lack of knowledge, but only where there are facts that point in the direction of deliberate ignorance." United States v. Sanchez-Robles, 927 F.2d 1070, 1073 (9th Cir.1991) (quotation omitted).
 
 
 12
 Here, Yakima Officer Castillo testified to entering the Race Track Tavern in full uniform on October 13, 1988 and finding a customer preparing to consume cocaine. This person was six feet away from the officer. The officer further testified as follows:
 
 
 13
 Q And would you tell the jurors if Defendant Huerd was in there at that time?
 
 
 14
 A Yes, Mr. Huerd was standing approximately eight feet on the other side of this individual that was cutting the cocaine on the table, on the bar. The person was sitting up higher than we were standing, and Mr. Huerd was directly in line on the other side.
 
 
 15
 Q Where was Mr. Huerd looking when you walked in the door?
 
 
 16
 A He had to be looking right toward the door, because as soon as we walked in he saw us and started making a beeline to the other side of the bar.
 
 
 17
 Q Away from you?
 
 
 18
 A Yes, sir, away from.
 
 
 19
 Q Away from the person with cocaine?
 
 
 20
 A Yes.
 
 
 21
 * * *
 
 
 22
 Q ... Now, [referring to a diagram] would you show the jurors what Mr. Huerd did or where he went, if anywhere upon approach?
 
 
 23
 A As we came in, ... I eventually saw the cocaine that was lined up on the table. And it was, the person had been working at it awhile because it was already lined up, and he made some statements later that--
 
 
 24
 Q What do you mean he had been working on it for awhile?
 
 
 25
 A Moving around on the table and cutting it up so he could snort it or use it by sniffing it into his nose.
 
 
 26
 Q Now, would you show us on the diagram where Mr. Huerd went?
 
 
 27
 A At this, when he saw us, he had to be looking at that direction because when we came in, he immediately saw us in uniform and took off to the other end of the bar. Which he stayed at that end the entire time that we were there.
 
 
 28
 * * *
 
 
 29
 Q ... Now, was it easier for you or Mr. Huerd to see the person with the cocaine?
 
 
 30
 A It would have been easier for Mr. Huerd because it was directly on the table or on the table [sic]. Mr. Huerd was on the other side of that table, and we had to look past, or beyond the suspect in this case, to see the cocaine.
 
 
 31
 Q Now, did Mr. Huerd come up to you and ask what was going on?
 
 
 32
 A No, he didn't say anything.
 
 
 33
 As soon as he saw us he went straight to the other side of the bar and stayed there.
 
 
 34
 * * *
 
 
 35
 Q Now, you said that the person, that it appeared that the person cutting the cocaine had not just arrived there, that he had been doing this for moments; is that right?
 
 
 36
 A That's right. And then also in statements that he made.
 
 
 37
 Q And did he indicate, or did it appear when you walked into the bar that he was acting very covertly and trying to hide his actions or was he, was he perfectly open about what he was doing?
 
 
 38
 A He was quite open.
 
 
 39
 The record also contains testimony of Yakima County Sheriff's Deputy Cooper. Deputy Cooper described how, on one occasion in late 1988 or 1989, he went to the Race Track Tavern to do a "bar check":
 
 
 40
 A ... [W]hen I arrived there, I noticed various paraphernalia in the men's restroom. I contacted Carl Huerd and showed him what it looked like. It was some tin foil and had a white powdery substance on it that had been used in the men's restroom.
 
 
 41
 Q Did you have an idea of what that white powdery substance was?
 
 
 42
 A Through my years of experience, I recognized it as cocaine residue.
 
 
 43
 * * *
 
 
 44
 Q And what was Mr. Huerd's response to your pointing out this evidence of drug use?
 
 
 45
 A Carl Huerd seemed to be shocked that they were doing that in the tavern. And he acted what I would consider naive about the drug problem there.
 
 
 46
 Deputy Cooper then testified to subsequent contacts with Huerd:
 
 
 47
 A At various times during the process of making an arrest there I would advise him that I had a person under arrest for whatever the reason was. During this time period Carl Huerd was advised by myself and other deputies of the problem.
 
 
 48
 * * *
 
 
 49
 Q ... What were Mr. Huerd's responses to the subsequent contacts regarding drug arrests or drugs discovered at the Racetrack Tavern?
 
 
 50
 A Each time Carl Huerd would indicate that he didn't, that he didn't know they were doing that, or continuous innocence about the problem there.
 
 
 51
 The record thus includes testimony suggesting that the defendant literally turned a blind eye to the use of drugs in his tavern. Furthermore, even if Huerd was genuinely naive when Deputy Cooper first informed him of drug problems at the tavern, the deputy's subsequent testimony of Huerd's "continuous innocence" raises a question of deliberate ignorance in view of evidence of continuing drug activity at the tavern.[4] Thus, we cannot say that it was plain error for the district court to instruct the jury on this theory of guilty knowledge.
 
 B
 
 52
 As part of its deliberate ignorance instruction, the district court stated: "It is not sufficient to show that the defendant may have suspected or thought that the tavern was being used for the purpose of unlawfully distributing or using a controlled substance." At trial, Huerd objected to this language as not conforming to the following language from the Chen instruction on deliberate ignorance: "A showing of negligence or mistake is not sufficient to support a finding of willfulness or knowledge." 913 F.2d at 187.
 
 
 53
 On appeal, Huerd challenges the district court's decision not to "advise the jury that a showing of negligence or mistake was insufficient to support a finding of knowledge." However, in a separate instruction the court did warn the jury that "act[ing] through ignorance, mistake or accident" is not enough to prove knowledge.
 
 
 54
 Furthermore, we cannot say the district court abused its discretion in rejecting the language urged by the defendant in formulating a deliberate ignorance instruction. The actual instruction's language negating suspicion, coupled with language requiring "a conscious purpose to avoid enlightenment," sufficiently precludes the possibility that Huerd would be convicted solely on the ground that he should have known of the illegal conduct. Cf. Sanchez-Robles, 927 F.2d at 1073 (deliberate ignorance instruction risks conviction based on mere negligence, i.e., on the theory that defendant should have known of illegal conduct).
 
 C
 
 55
 Finally, in his reply brief Huerd contends that the deliberate ignorance instruction is erroneous for not referring specifically to a "high probability" of a fact's existence. Ordinarily, we will not consider arguments made for the first time in reply. E.g., Eberle v. City of Anaheim, 901 F.2d 814, 818 (9th Cir.1990). Even assuming we may consider Huerd's argument, it lacks merit. The actual instruction required that the fact in question must be "obvious." This language was taken from the jury instructions in Chen, 913 F.2d at 187, a case which Huerd urged the district court to follow. Huerd made no objection to this language below, and we have previously indicated that absence of the "high probability" language does not amount to plain error. Jewell v. United States, 532 F.2d 697, 704 n. 21 (9th Cir.) (en banc), cert. denied, 426 U.S. 951 (1976).
 
 
 56
 AFFIRMED.
 
 
 
 *
 The panel unanimously agrees that this case is appropriate for submission without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Instruction 11 also sets out the other elements of an offense under 21 U.S.C. § 856(a)(2). In passing, Huerd contends that one of these elements is the defendant's "involvement" in a "scheme to allow the sale, distribution, storage, manufacture, or use of illegal drugs upon the property." We rejected a similar argument in United States v. Tamez, 941 F.2d 770, 774 (9th Cir.1991), and in any event Huerd's contention finds no basis in the statute
 
 
 [2]
 Furthermore, the instructions preclude a conviction based on the theory advanced by the government during closing argument that the defendant need not have "personal knowledge of drugs being used and sold at the Race Track Tavern." Although the government's argument is troubling, defendant raised no contemporaneous objection. Furthermore, on appeal he does not mention the closing argument until his reply brief. Because the instructions foreclose any such theory of conviction, we need not consider further whether the government's closing argument itself would warrant reversal
 
 
 [3]
 Nevertheless, we are disturbed by the testimony of a special agent of the Drug Enforcement Administration, who appears to have attributed the cause of drug trafficking to one race of people, and to that race generally. However, because this testimony was elicited on cross-examination and thus was not part of the government's case, we conclude that the lack of a more specific instruction on generalized suspicions was not plain error
 
 
 [4]
 Contrary to Huerd's assertion, nothing in the record indicates that the events described by Deputy Cooper necessarily took place before Huerd became owner of the tavern. Although the incident described by Officer Castillo apparently occurred two weeks before Huerd acquired ownership, the incident nevertheless pertains to a time when Huerd may have "managed" the tavern. The officer's testimony is also suggestive of Huerd's mental state after he purchased the tavern