992 F.2d 1218
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Lonnie TOLLIVER, Defendant-Appellant.
 No. 91-4130.
 United States Court of Appeals, Sixth Circuit.
 April 5, 1993.
 
 Before GUY and BOGGS, Circuit Judges, and GIBSON, Chief District Judge.*
 PER CURIAM.
 
 
 1
 Defendant, Lonnie Tolliver, appeals his jury conviction and sentence for conspiracy to possess with intent to distribute cocaine base, possession with intent to distribute, and making a residence available for the purpose of distributing cocaine. Tolliver contends that he is being punished because of his mere presence at a residence, which his common-law wife leased, when law enforcement officers executed a search warrant and found contraband and weapons. Defendant argues the trial court erred in denying his motion for acquittal on all counts. Tolliver also contests the trial court's failure to give his proposed jury instructions, and challenges certain instructions given by the court to the jury which allegedly constituted an amendment to Tolliver's indictment. Finally, Tolliver argues that certain statements should have been suppressed, evidence with an inadequate chain of custody should not have been admitted, and the court should have made a downward departure when sentencing because of Tolliver's significantly diminished mental capacity. We reverse Tolliver's conviction on Count 3, but otherwise affirm.
 
 I.
 
 2
 Suspecting ongoing criminal activity, Officer Gary Rundio of the Columbus, Ohio, Police Department requested permission in December 1988 to enter the back door of a house located at 464 South Champion Avenue in Columbus. He received permission to enter, and upon doing so, Rundio noticed 15 to 20 people on the first floor. He specifically identified Tolliver, Johnny Jackson, and Noah Borden as being present. When Rundio asked who lived at the residence, Tolliver stated that "he rented." Then, Rundio asked Tolliver, "[W]ho's on the lease?" Tolliver answered, "[M]y wife, Connie, is on the lease." (App. 146).
 
 
 3
 Rundio walked through the residence for almost half an hour. While there, he noticed that the front door was barricaded to make access more difficult. Based on his experience, Rundio knew that front doors of crack houses were often barricaded to impede the entry of police officers in order to heighten the opportunity to destroy incriminating evidence. After leaving, Rundio drew a diagram of both the first and second floors of the house.
 
 
 4
 The next day, two narcotics detectives from the Columbus Police Department initiated a controlled purchase of crack cocaine from the residence at 464 South Champion Avenue. The detectives gave $40 in city funds to a cooperating individual to make a purchase, and he returned with .2 grams of cocaine, which had been purchased for $25. Although the buyer was not under constant surveillance, the detectives monitored his activity from an unmarked car a block and one-half from 464 South Champion Avenue. Four days later, the detectives and the cooperating individual went through the same sequence in purchasing .1 grams of cocaine from the residence.
 
 
 5
 Based on the controlled purchases, the detectives obtained a warrant to search 464 South Champion Avenue. On the night of December 14, 1988, members of the Columbus police department's narcotics bureau and SWAT unit executed the search warrant. Members of the team entered both the front and back of the premises, and once inside observed Noah Borden running from the kitchen into the living room. One of the officers gave chase, and Borden dropped a .38 caliber R.G. revolver and dove to the floor. Another individual, Carl Taylor, was found lying on the floor next to a sofa. Nearby was a .380 semi-automatic pistol, cash, and a quantity of crack cocaine. In the basement, Johnny Jackson was found hiding underneath some mattresses.
 
 
 6
 Pat Dillon, a member of the SWAT unit who secured the second floor, found Tolliver crouched in the closet of an upstairs bedroom. Tolliver identified himself, and "gave [Officer Dillon] an address of 464 South Champion." (App. 160). Dillon then found a .25 caliber Raven semi-automatic pistol lying in a pile of debris in the same bedroom. In all, the search of the residence resulted in the seizure of a machete; 1.74 grams of 94 percent pure crack cocaine; 5.19 grams of 95 percent pure crack cocaine; 10.94 grams of 94 percent pure cocaine; an envelope addressed to Mr. and Mrs. Lonnie Tolliver, 464 South Champion Avenue, Columbus, Ohio; and a letter from the county department of human services addressed to Lonnie Tolliver, 464 South Champion Avenue, postmarked January 11, 1988.
 
 
 7
 After being advised of his Miranda rights, Tolliver informed Officer Michael Malloy that he was residing at 464 South Champion Avenue. Then, after his arrest, while being interviewed by Cheryl Campbell to obtain information for a master history sheet, Tolliver again identified 464 South Champion Avenue as his residence.
 
 
 8
 Tolliver admitted that he lived at the residence in early 1988. However, he was incarcerated for much of the spring and summer of 1988. Upon his release in October, he alleges that he went to live at 411 Wilson Avenue in Columbus with Gwendolen Upchurch. Tolliver produced an Ohio driver's license which listed the Wilson Avenue address as his own.
 
 
 9
 Tolliver's common-law wife, Connie Tolliver, testified at trial that she previously had leased the premises at 464 South Champion, but had left Columbus in November 1988. She acknowledged that drug usage had occurred at the residence, that Johnny Jackson was involved in trafficking drugs at 464 South Champion, and that Jackson and his friends continued to distribute drugs after she vacated the premises in November. Tolliver emphasizes the testimony of Connie Tolliver that he continued to receive some mail and keep some possessions at 464 South Champion but did not live there after his October 1988 release from prison.
 
 
 10
 In an indictment dated January 17, 1991, Tolliver was charged for his role in the operation at 464 South Champion. Count 1 charged him with conspiracy to possess with the intent to distribute and to distribute in excess of five grams of cocaine base. Count 2 charged Tolliver with possession with intent to distribute in excess of five grams of cocaine base. In Count 3, Tolliver was charged with knowingly and intentionally making 464 South Champion Avenue available for the purpose of unlawfully distributing a controlled substance, in violation of 21 U.S.C. § 856(a)(2) and 18 U.S.C. § 2. After a jury verdict finding Tolliver guilty on all counts, he was sentenced to serve a 120-month term of imprisonment.
 
 II.
 
 11
 According to Tolliver, the direct and circumstantial evidence in this case fails to support a conviction on any of the three counts. Tolliver contends that he was improperly convicted on the basis of his mere presence at the scene when police officers executed a search warrant at 464 South Champion. He disputes the government's contention that he did control, as lessee, the residence, or otherwise aided and abetted the commission of the offenses by maintaining the premises. The government responds generally that the evidence was sufficient on all three counts to convict Tolliver.
 
 
 12
 In reviewing the denial of a motion for acquittal, we must sustain a jury conviction if substantial evidence exists on the record to support it. Glasser v. United States, 315 U.S. 60, 80 (1942). We must view all the evidence in the light most favorable to the government, resolving all inferences which may be reasonably drawn from the evidence in the government's favor and resolving all conflicts in testimony the same way. United States v. Tilton, 714 F.2d 642 (6th Cir.1983). If any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, the conviction must be affirmed. Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 A. Count 1--Conspiracy
 
 13
 We find the government produced sufficient circumstantial evidence to sustain Tolliver's conspiracy conviction on Count 1. Tolliver was not merely present when police executed a search warrant at 464 South Champion, as he alleges. Officer Rundio testified that when he conducted a walk-through of the house Tolliver was on the premises. Indeed, Tolliver stated at that time he rented the premises, although his common-law wife was named on the lease. Tolliver's statement to Officer Rundio that he lived at 464 South Champion coincided with his later assertions to three other police officers. Letters addressed to Tolliver also were found at that address. Moreover, his attempt to avoid detection during the execution of the search warrant belies his argument that he was merely present at the house. In addition, the house over which Tolliver had control was essentially a fortified crack house, with blocked access to the front door and guns, drugs, and money concealed inside. Taken together, these facts indicate that the jury did not act unreasonably in concluding that Tolliver was a participant in the conspiracy. See United States v. Brett, 872 F.2d 1365, 1369 (8th Cir.) (defendant's possession of a key to the front door of a known crack house and his attempted flight with large amounts of money when officers executed search warrant were enough cumulatively to convict him of conspiracy), cert. denied, 493 U.S. 932 (1989).
 
 
 14
 Whether or not Tolliver was the legal lessee of the premises matters not in the analysis of the conspiracy count. Tolliver maintained the residence, and exercised control over it. Whatever his precise legal relationship to 464 South Champion, for purposes of the conspiracy conviction it was enough that Tolliver maintained control of the residence and made it available as a crack house.
 
 
 15
 Defendant cites United States v. Bell, 954 F.2d 232 (4th Cir.1992), in support of his argument that the government needed to prove more to establish that Tolliver was involved in a conspiracy. In Bell, the defendant had been at a location where 30.71 grams of crack cocaine were found, had associated with others who violated the law, and had himself attempted to violate the law. Yet, the court found that this evidence was insufficient to establish the existence of a specific agreement between the men to violate the same laws. Id. at 238. See also United States v. Waddy, 536 F.2d 632 (5th Cir.1976) (defendant "was in and out of the rooms of some of those participating in marijuana activities" and he had carried suitcases for these men, but that close interaction was found insufficient to prove a conspiracy to possess and/or distribute the marijuana).
 
 
 16
 We are mindful that conspiracies are not proved by mere association with unsavory characters, see United States v. Davis, 981 F.2d 906, 912-13 (6th Cir.1992) (Suhrheinrich, J., dissenting), but such is not the case here. The evidence established that Tolliver lived at 464 South Champion, and was involved in drug trafficking. Thus, a crucial difference exists between the cases cited by defendant and this case, because Tolliver actively maintained the residence where drug trafficking occurred. Cf. United States v. Pearce, 912 F.2d 159, 162 (6th Cir.1990) (reversing defendants' convictions for conspiracy where "other than the fact that both [defendants] were in the house at the time of the police raid, the government introduced no evidence of a connection between [defendants] to maintain a crack house"), cert. denied, --- U.S. ----, 111 S.Ct. 978 (1991).
 
 
 17
 B. Count 2--Possession with Intent to Distribute
 
 
 18
 We also affirm Tolliver's conviction for possession with intent to distribute in excess of five grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii) and 18 U.S.C. § 2.[1] It is not clear whether Tolliver was convicted for aiding and abetting another's possession of cocaine base with intent to distribute, or whether he was convicted for possession himself. Tolliver assumes he was convicted of the former charge but we need not resolve this issue because the evidence sustains either an aiding and abetting conviction or a possession with intent to distribute conviction. Tolliver maintained the residence at 464 South Champion, where drugs were distributed. A jury can reasonably infer that a person who exercises dominion and control over a premises constructively possesses contraband found on those premises. United States v. Johnson, 944 F.2d 396, 400-01 (8th Cir.) (in criminal proceeding for possession with intent to distribute cocaine, one who had dominion or control over premises in which contraband is concealed can be found to have constructive possession over contraband itself), cert. denied, --- U.S. ----, 112 S.Ct. 590 (1991); United States v. Long, 905 F.2d 1572, 1578 (D.C.Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 365 (1990); United States v. Alvarado, 882 F.2d 645, 654 (2d Cir.1989); cert. denied, 493 U.S. 1071 (1990); United States v. Robinson, 857 F.2d 1006, 1010 (5th Cir.1988). As such, Tolliver's Count 2 conviction is proper.
 
 
 19
 C. Count 3--Aiding and Abetting the Maintenance of a Crack House
 
 
 20
 In Count 3, the indictment charged that Tolliver, as lessee, knowingly and intentionally made available 464 South Champion for the purpose of unlawful distribution, use, or storage of crack cocaine, in violation of 21 U.S.C. § 856(a)(2) and 18 U.S.C. § 2. Defendant contends that because the trial court recognized that he was not the lessee of the premises, the government failed to prove an essential element of the offense and thus he cannot be convicted for violating § 856(a)(2). We agree that Tolliver's conviction under Count 3 of the indictment must be reversed, but for reasons that differ somewhat from those of the defendant.
 
 The language of 21 U.S.C. § 856 provides:
 
 21
 § 856. Establishment of manufacturing operations
 
 
 22
 (a) Except as otherwise authorized by this title, it shall be unlawful to--
 
 
 23
 (1) knowingly open or maintain any place for the purpose of manufacturing, distributing, or using any controlled substance;
 
 
 24
 (2) manage or control any building, room, or enclosure, either as an owner, lessee, agent, employee, or mortgagee, and knowingly and intentionally rent, lease, or make available for use, with or without compensation, the building, room, or enclosure for the purpose of unlawfully manufacturing, storing, distributing, or using a controlled substance.
 
 
 25
 (b) Any person who violates subsection (a) of this section shall be sentenced to a term of imprisonment of not more than 20 years or a fine of not more than $500,000, or both, or a fine of $2,000,000 for a person other than an individual.
 
 
 26
 In answer to a question from the jury which sought a definition of the term "lessee," the trial court told the jury that Tolliver was not a lessee within the meaning of § 856(a)(2).[2] Rather, the lessee was Tolliver's wife, Connie. However, the trial court agreed with the government that Tolliver could be convicted under Count 3 as an aider or abettor. Thus, in answer to another question by the jury,[3] the court stated:
 
 
 27
 Members of the jury, although Count 3 does not use the words aider and abettor, you will note that in the last sentence, there is a reference to 18 United States Code Section 2 which is the aiding and abetting statute. You should consider the Court's instructions on aiding and abetting in determining whether or not the government has proved beyond a reasonable doubt that defendant is guilty of Count 3 as an aider and abettor.
 
 
 28
 (App. 93-94).
 
 
 29
 The trial court found that Tolliver could not be convicted for violation of § 856(a)(2), for Tolliver had no legal relationship to the property as required by § 856(a)(2). Courts that have considered the congruity of §§ 856(a)(1) and (a)(2) have held that (a)(1) is designed to punish those who have direct, day-to-day control over a premises and engage in drug trafficking there, while (a)(2) punishes those who have a legal relationship ("either as an owner, lessee, agent, employee, or mortgagee") to a residence and either actively engage in drug trafficking or knowingly acquiesce in the premises' use as a drug house. See United States v. Johnson, 977 F.2d 1360, 1373 (10th Cir.) (where one defendant owned neither the cabin nor surrounding property, but instead helped to maintain the premises, he was properly convicted under § 856(a)(1) and not § 856(a)(2); his co-defendant, who purchased the property and attempted to manufacture drugs there, acted in violation of § 856(a)(2)), cert. denied, 113 S.Ct. 1024 (1993); United States v. Morehead, 959 F.2d 1489, 1507 (10th Cir.), adhered to on reh'g en banc sub nom. United States v. Hill, 971 F.2d 1461 (10th Cir.1992); United States v. Chen, 913 F.2d 183, 190 (5th Cir.1990) (owner of motel where significant drug trafficking occurred convicted under subsection (a)(2) for her "deliberate ignorance" to surrounding conditions).[4]
 
 
 30
 Tolliver asserts that, because the trial judge found he was not a lessee, he cannot be convicted for violating § 856(a)(2). His argument misunderstands the nature of his conviction. Tolliver was convicted as an aider or abettor. Therefore, we must consider whether the government proved that someone committed the underlying crime, "because an alleged aider and abettor cannot be convicted unless there is proof beyond a reasonable doubt that the underlying offense was committed." United States v. Mann, 811 F.2d 495, 497 (9th Cir.1987).
 
 
 31
 A conviction for aiding and abetting does not require that the principal be tried and convicted, or even that the principal be identified. Id. Indeed, an aider and abettor's conviction may be upheld even if the principal is acquitted of the underlying offense. Standefer v. United States, 447 U.S. 10, 20 (1980). However, the requirement still exists that the government prove that the underlying offense was committed. Id. at 13 n. 6.
 
 
 32
 Here, the government did not attempt to prosecute a principal for the underlying offense of violating § 856(a)(2). Conceivably, that principal would have been Tolliver's wife, Connie, the lessee of the premises. The government's failure to prosecute an alleged principal is not fatal to the government's case. However, in attempting to convict Tolliver of aiding and abetting the commission of the underlying offense, the government failed to prove that the underlying offense occurred.
 
 
 33
 Count 3 of the indictment charged Tolliver with violating § 856(a)(2) and 18 U.S.C. § 2 "on or about December 14, 1988." The government's theory, which it explained at its closing argument, was that Connie Tolliver had abandoned the premises in November of 1988 and Lonnie Tolliver had moved in at 464 South Champion. Thus, the government never tried to prove that either Connie Tolliver or another possessed the requisite criminal intent as a principal in the underlying offense committed "on or about December 14, 1988." See Mann, 811 F.2d at 497 (jury instruction improperly allowed jury to convict defendant without first determining that principal committed underlying offense); United States v. Tashjian, 660 F.2d 829, 842 (1st Cir.) (reversing aiding and abetting convictions where government failed to prove principal's requisite intent on the underlying offense), cert. denied, 454 U.S. 1102 (1981).
 
 
 34
 Of course, regardless of the government's theory of the case, if sufficient evidence existed for the jury to conclude that a principal such as Connie Tolliver committed the underlying offense, Lonnie Tolliver's conviction for aiding and abetting another's violation of § 856(a)(2) must be affirmed. However, after a thorough review of the entire record of Tolliver's trial, we find insufficient evidence was presented from which a reasonable juror could conclude that Connie Tolliver committed the underlying § 856(a)(2) offense. That is not to say that no further evidence could have been adduced that would establish that Connie Tolliver violated § 856(a)(2); however, we are bound by the evidence produced at Lonnie Tolliver's trial.
 
 
 35
 Connie Tolliver testified that she lived at 464 South Champion at a time when drug usage and cocaine trafficking occurred there. However, she also testified that she moved out of the residence in November of 1988 with her children and went to Berea, Ohio, after telling Johnny Jackson and his friends to stop dealing drugs at 464 South Champion. When he refused to stop, she left the premises because of Jackson's increasing propensity to distribute drugs at the residence. She was not present on December 14 when police officers executed a search warrant, nor was there testimony that she was present when a confidential informant made a controlled purchase on two separate occasions in early December. Thus, there was no evidence on this record that Connie Tolliver knowingly and intentionally made available 464 South Champion for drug trafficking in December 1988. She did not take part in or aid others' drug trafficking. Cf. Chen, 913 F.2d at 186 (motel owner convicted under § 856(a)(2) after testimony that she alerted tenants when she became aware of law enforcement officers, she encouraged tenants to make drug sales so that their rent could be paid, she stored drugs and drug proceeds for tenants, and she loaned money to tenants to purchase drugs); United States v. Brown, Nos. 89-3549/3558 (6th Cir. April 30, 1990) (despite defendant's claim that she had moved, jury could have concluded that defendant was "a part of the drug business" being conducted at premises she leased after testimony that she sold drugs from apartment, cocaine was found throughout the house and in her bedroom, she admitted that drug dealers were using her apartment to sell cocaine, officers found pictures of her and another defendant holding large sums of cash, and a witness saw her place a bag in a bucket on her front porch which was then retrieved by others who came to the porch). With no support in the record for a separate finding that the specific underlying crime occurred, Lonnie Tolliver's aiding and abetting conviction must be reversed.[5]
 
 III.
 
 36
 Defendant next contends that the trial court committed prejudicial error in failing to suppress his statements to police officers when the statements were not disclosed to defendant until the day before trial and the government allegedly represented earlier that no such statements existed. The government responds that Tolliver was not prejudiced by introduction of the statements. At issue are admissions that Tolliver made on separate occasions to law officers Pat Dillon and Cheryl Campbell acknowledging that he lived at 464 South Champion. The government had earlier represented that the only statement about which it had knowledge was Tolliver's declaration to Officer Malloy that Tolliver did in fact reside at 464 South Champion.
 
 
 37
 We review for abuse of discretion a district court's refusal to suppress a defendant's statement that has not been supplied to the defense in a timely fashion. United States v. Muhammad, 948 F.2d 1449, 1454 (6th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1239 (1992). In this regard, we have noted that it is inappropriate to exclude relevant evidence when a recess or a continuance would have adequately protected a defendant's interests and the defendant failed to seek a continuance. This is particularly true when the government "neither willfully nor negligently violated the discovery order." United States v. Bartle, 835 F.2d 646, 650 (6th Cir.1987), cert. denied, 485 U.S. 969 (1988).
 
 
 38
 In the present case, the government alleges that it provided Tolliver with a copy of his master history sheet--about which Cheryl Campbell testified--"prior to trial and certainly prior to the suppression hearing." (Gov't Brief at 18). Thus, Campbell's testimony should not have surprised Tolliver. In addition, Dillon's testimony coincided with the testimony of Malloy, whose statements were presented to Tolliver long before trial. Tolliver fully cross examined both Campbell and Dillon during a suppression hearing on the statements. He also had the opportunity to seek a recess or a continuance, but sought neither. Thus, he cannot at this stage argue prejudice.
 
 IV.
 
 39
 During discussions with the media after the execution of the search warrant on the premises, the mayor of Columbus, the superintendent of schools, and others physically handled the crack cocaine which had been seized. Tolliver argues that the "media exploitation" of the search resulted in a broken chain of custody of the crack cocaine, necessitating that the evidence not be admitted at trial. In addition, Tolliver alleges that the property number on at least one exhibit was changed by some unknown person. The trial court allowed the evidence to be admitted, and Tolliver argues that ruling was erroneous.
 
 
 40
 We have held previously that absent a clear showing of abuse of discretion, "challenges to the chain of custody go to the weight of evidence, not its admissibility." United States v. Levy, 904 F.2d 1026, 1030 (6th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 974 (1991). No clear showing of abuse exists here. Moreover, Tolliver's counsel spent much time at closing argument attacking the weight of this evidence. The trial court's decision to admit this evidence was not an abuse of discretion.
 
 V.
 
 41
 Finally, Tolliver challenges the trial court's failure to depart downward pursuant to § 5K2.13 of the Sentencing Guidelines because of Tolliver's diminished mental capacity. The trial court found that Tolliver's diminishment was not "significant" and was caused by voluntary drug use.
 
 
 42
 Section 5K2.13 of the sentencing guidelines permits a court to consider a defendant's diminished capacity as a mitigating factor which may be considered at sentencing. It provides:
 
 
 43
 If the defendant committed a non-violent offense while suffering from significantly reduced mental capacity not resulting from voluntary use of drugs or other intoxicants, a lower sentence may be warranted to reflect the extent to which reduced mental capacity contributed to the commission of the offense, provided that the defendant's criminal history does not indicate a need for incarceration to protect the public.
 
 
 44
 A defendant may not appeal the failure to depart downward from the guidelines "when the sentence imposed is within the guidelines and otherwise valid." United States v. Loehr, 966 F.2d 201, 204 (6th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 655 (1992). Our examination of the record convinces us that the district court properly computed the guideline range, knew of its discretion to depart downward from the guideline range, and did not impose a sentence as a result of an incorrect application of the guidelines. See United States v. Davis, 919 F.2d 1181 (6th Cir.1990). Accordingly, the district court's decision not to depart downward is not appealable.
 
 
 45
 Even assuming that Tolliver could raise the issue, the trial court did not err in refusing to depart downward. In deciding that Tolliver did not suffer from significantly reduced mental capacity, the court did not abuse its discretion. See United States v. Bennett, 975 F.2d 305, 308 (6th Cir.1992) (factual findings scrutinized under abuse of discretion standard). In addition, the psychological report accompanying the examination of Tolliver indicated that his diminished capacity resulted from voluntary use of drugs. The guidelines clearly proscribe a downward departure in those circumstances. United States v. Borrayo, 898 F.2d 91, 94 (9th Cir.1989).
 
 
 46
 AFFIRMED in part, REVERSED in part, and REMANDED for resentencing.
 
 
 
 *
 Honorable Benjamin F. Gibson, United States District Court for the Western District of Michigan, sitting by designation
 
 
 [1]
 18 U.S.C. § 2 is the aiding and abetting statute, and it provides:
 (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
 (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.
 
 
 [2]
 On appeal, the government has not challenged this conclusion by the trial court. Thus, we do not address the appropriateness of the district court's finding
 
 
 [3]
 The jury asked: "Judge, in Count 3, are we to find Mr. Tolliver not guilty as a lessee as charged or as an aider and abettor as it does not state aider and abettor in count number 3." (App. 93)
 
 
 [4]
 We leave for another day the question of whether a defendant who uses another's identity or a fictitious name to lease, own, or enter into a mortgage would be criminally liable under 21 U.S.C. § 856(a)(2). That is not our case. We have no doubt, however, that in those circumstances the defendant would be liable under § 856(a)(1) if the government proved sufficient control of the premises by the defendant. Moreover, the party whose name was used in such an arrangement might also be punishable under § 856(a)(2) as the legal lessee, owner, or mortgagee if that person had the requisite criminal intent
 
 
 [5]
 Having resolved that Tolliver's aiding and abetting conviction was improper, we need not reach two questions raised by defendant concerning an alleged amendment to the indictment and proposed jury instructions. We note, however, that the trial court did not impermissibly amend the indictment when it instructed the jury that it should consider the applicability of 18 U.S.C. § 2 to Count 3 because that statute was specifically included in Count 3 of the indictment. In addition, we have held previously that 18 U.S.C. § 2 is embodied in all federal indictments. See United States v. Maselli, 534 F.2d 1197, 1200 (6th Cir.1976). Moreover, the court did not err in failing to read Tolliver's proposed jury instructions regarding the definition of "lessee." The court's instruction was proper, for it clearly and accurately defined the term in easily understandable language. See United States v. Horton, 847 F.2d 313, 322 (6th Cir.1988)