**REVISED, November 19, 1998**

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 96-21045

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

VERSUS

WILLIAM T SCOTT; LINDA D SCOTT; RALPH BEN-SCHOTER,

Defendants - Appellants.

Appeals from the United States District Court
For the Southern District of Texas
October 29, 1998

Before REAVLEY, DAVIS, and DUHÉ, Circuit Judges

JOHN M. DUHÉ, JR., Circuit Judge:

A jury found Defendants-Appellants William T. Scott ("Mr. Scott"), Linda D. Scott ("Mrs. Scott"), and Ralph Ben-Schoter ("Ben-Schoter") guilty of one count of conspiracy (18 U.S.C.A. § 371), three counts of transferring false obligations of the United States (18 U.S.C.A. § 473), one count of bank fraud (18 U.S.C.A. § 1344), two counts of wire fraud (18 U.S.C.A. § 1343), and one count of interstate transportation of stolen money (18 U.S.C.A. § 2314). Additionally, the jury found Ben-Schoter guilty of six counts of money laundering (18 U.S.C.A. § 1956). On this direct appeal, they challenge the sufficiency of evidence supporting their convictions for bank fraud and transferring false obligations and the propriety of the district court's instruction on deliberate ignorance. They also argue the district court incorrectly calculated their sentences and improperly denied four challenges for cause of prospective jurors. Finally, the Defendants assert they were denied effective assistance of counsel. We reverse the Defendants' convictions for transferring false obligations of

the United States, affirm their remaining convictions and remand to the district court for resentencing.

## I. BACKGROUND

The Defendants' convictions arise from three "credit enhancement" transactions in which they purported to lease United States Treasury Notes ("treasury notes") owned by the Delmarva Timber Trust ("Nevada Trust") to borrowers enabling them to obtain large loans for various purposes. The Defendants formed the Nevada Trust, of which Mrs. Scott was President and CEO and Mr. Scott and Ben-Schoter were consultants, and created documents entitled "Registered Owner of Treasury Note Certificates" ("Certificates"), which fraudulently reflected the Nevada Trust's ownership of millions of dollars in treasury notes. In reality, the Nevada Trust did not own any treasury notes. The Nevada Trust would purport to lease the treasury notes to borrowers for a flat fee, and sometimes a percentage of the development deal, to enhance the borrowers' creditworthiness. The prospective borrowers would receive the Certificates from the Nevada Trust and use them as collateral to secure large loans.

All three transactions were real estate deals. In the first transaction, the Defendants, through the Nevada Trust, leased the Certificates to Michael Douglass, who used them as collateral in connection with the sale of a ranch owned by a trust benefitting a widow, Laverne Shiflett. After Douglass defaulted on the $3,050,000 note he gave for the purchase price, Shiflett attempted to foreclose on the treasury notes the Certificates had purportedly evidenced as collateral and failed.

In the second transaction, the Defendants, again through the Nevada Trust, leased the Certificates to Richard Montgomery to enable him to receive a $6,000,000 loan from Citibank, London, England to purchase an office building. Montgomery did not complete the sale because the participants were arrested by Scotland Yard at the loan closing.

In the third transaction, the Defendants leased the Certificates in the same manner to Thomas Brennan to enable him to obtain a loan to purchase landfills for New York City garbage. The loan never closed because Brennan was unable to obtain financing with the Certificates.

The Secret Service unearthed the Defendants' scheme through a thorough investigation. Secret Service Agent Tim Gobble interviewed the Defendants on several occasions prior to their indictment. During these interviews, the Defendants explained how they became involved with the Nevada Trust and the Certificates. Ben-Schoter claimed he became involved through Don and Owen Meddles. He explained he was a former trustee of another trust, the Delmarva Timber Trust organized in Maryland ("Maryland Trust"), and that Don and Owen Meddles instructed him to form the Nevada Trust to lease the Certificates. All of the Defendants asserted they relied on others in believing that the Maryland Trust owned millions of dollars in assets and that the Maryland Trust had granted the Nevada Trust permission to use the Certificates in these transactions.

## II. DISCUSSION

A. Sufficiency of evidence

The Defendants challenge the sufficiency of the evidence to support their convictions. The standard of review for a sufficiency of evidence claim is whether, after viewing the evidence and the reasonable inferences which flow therefrom in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See United States v. Kindig, 854 F.2d 703, 706-07 (5th Cir. 1988); see also United States v. Mulderig, 120 F.3d 534, 546 (5th Cir. 1997). We review the evidence, whether direct or circumstantial, and all reasonable inferences drawn therefrom, in the light most favorable to the verdict. See United States v. Salazar, 958 F.2d 1285, 1291 (5th Cir. 1992).

1. 18 U.S.C.A. § 473

The Defendants challenge the sufficiency of the evidence supporting their convictions for

transferring false obligations of the United States under § 473.[1] They argue their convictions should be reversed because the Certificates are not obligations or securities of the United States, the Defendants never suggested to anyone that the Certificates were obligations or securities of the United States, and none of the victims believed the Certificates were obligations or securities of the United States. The government argues the Defendants intended to lead the victims to believe the Certificates were issued or approved of by the United States government, and that, therefore, they satisfy § 473.

A document is considered a counterfeit obligation or security of the United States if the fraudulent obligation bears such a likeness or resemblance to any of the genuine obligations or securities issued under the authority of the United States as is calculated to deceive an honest, sensible and unsuspecting person of ordinary observation and care dealing with a person who is supposed to be upright and honest. United States v. Turner, 586 F.2d 395, 397 (5th Cir. 1978) (citing United States v. Smith, 318 F.2d 94, 95 (4th Cir. 1963)).

Section 473 expressly requires the involvement of an obligation or security of the United States to support a conviction, rather than a document evidencing the ownership of that obligation or security which is contained at another location.[2] The Certificates do not say they were issued by the United States, are not signed by a United States official, and do not bear an official seal of the United States. The Certificates do state they were issued by an officer of the Nevada Trust who states he received delivery of particular treasury notes on behalf of the Nevada Trust. The

_____

[1] § 473 provides:

Whoever buys, sells, exchanges, transfers, receives, or delivers any false, forged, counterfeited, or altered obligation or other security of the United States, with the intent that the same be passed, published, or used as true and genuine, shall be fined under this title or imprisoned not more than ten years, or both.

18 U.S.C.A § 473 (West Supp. 1998)

[2] The treasury notes were purportedly kept at Chemical Bank in New York or in the Cayman Islands.

4

Certificates were meant to evidence the Nevada Trust's ownership of treasury notes which are actually electronic documents.

Even if the evidence did support that the Certificates purported to be approved of or issued by the United States government, the transfer of the Certificates would not violate § 473 because the Certificates are not the actual obligation or security. They merely represent ownership of the obligation or security kept at another location. The government presented no evidence that any of the victims believed these certificates were treasury notes. All of the vicitms testified they believed the Certificates were backed by treasury notes owned by the Nevada Trust. We conclude a rational juror could not find the government proved the essential elements of § 473, even when construing the evidence in the light most favorable to the verdict. Therefore, we reverse the Defendants' convictions for transfer of false obligations of the United States under § 473 and vacate their sentences imposed for those convictions.

2. 18 U.S.C.A. 1344

The Defendants also challenge the sufficiency of the evidence supporting their convictions for bank fraud under § 1344.[3] They argue the government did not prove the Citibank's London branch involved in this transaction was insured by the FDIC. Proof of FDIC Insurance is an esssential element of the crime of bank fraud, as well as essential to establish federal jurisdiction. United States v. Schultz, 17 F.3d 723, 725 (5th Cir. 1994). Failure to prove the jurisdictional element of FDIC Insurance requires reversal of a bank fraud conviction. Id. at 727. The government argues the "Certificate of Proof of Insured Status" from FDIC officer Patti C. Fox establishes the Citibank's

---

[3]      § 1344 provides:
Whoever knowingly executes, or attempts to execute, a scheme or artifice ---
         (1) to defraud a financial institution; or
         (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a  financial institution, by means of false or fraudulent pretenses, representations, or promises;

shall be fined not more than $1,000,000 or imprisoned more than 30 years, or both.

18 U.S.C.A § 1344 (West Supp. 1998)

London branch involved in this case was insured by the FDIC.  The Defendants argue this certificate merely states that Citibank, N.A. is insured by the FDIC and that Citibank, N.A. has a London branch which is also insured by the FDIC.  They argue the government introduced no evidence to prove the branch involved in this case was, in fact, Citibank, N.A.'s London branch.

The government's proof was uncontroverted at trial on this issue.  We believe a reasonable juror could infer from the government's evidence that the London branch referenced in the FDIC "Certificate of Proof of Insured Status" was the branch where this transaction took place. Therefore, we affirm the Defendants' conviction for bank fraud under § 1344.


B.  Deliberate Ignorance Instruction

The Defendants argue the district court erred in instructing the jury on deliberate ignorance and base their objection on four grounds:  1) there was insufficient evidence of deliberate ignorance to support the instruction;  2) the placement of the instruction; 3) the statutes' requirement of both knowledge and specific intent; and 4) the government's theory of actual knowledge.  The Defendants argued only the first ground at the trial and argued the remaining grounds for the first time in their briefs.

The district judge instructed the jury on deliberate ignorance as follows:

> You may find that a defendant had knowledge of a fact if you find that the defendant deliberately closed his or her eyes to what would otherwise have been obvious to him or her. Knowledge on the part of the defendant cannot be established merely by demonstrating that the defendant was stupid, careless, negligent, or foolish.  In other words, you may not find the defendant had the requisite guilty knowledge merely by evidence that a reasonable person would have been aware of the illegal conduct.  Knowledge can be inferred, however, if the defendant deliberately blinded himself or herself to the existence of a fact.

1. Objection to Deliberate Ignorance Made at Trial

The standard of review applied to a defendant's claim that a jury instruction was inappropriate is "whether the court's charge, as a whole, is a correct statement of the law and whether it clearly instructs jurors as to the principles of the law applicable to the factual issues confronting them." United States v. August, 835 F.2d 76, 77 (5th Cir. 1987).  The district court "may not instruct the

6

jury on a charge that is not supported by the evidence." United States v. Ortega, 859 F.2d 327, 330 (5th Cir. 1988). Further, in determining whether the evidence reasonably supports the charge, the evidence and all reasonable inferences that may be drawn from it are viewed in the light most favorable to the government. United States v. Lara-Velasquez, 919 F.2d 946, 950 (5th Cir. 1990). This standard applies to the first ground of the Defendants' objection.

The Defendants argue the instruction was error because the government did not present sufficient evidence of willfull blindness to support the instruction. The instruction is proper only "when the defendant claims a lack of guilty knowledge and the proof at trial supports a reasonable inference of deliberate ignorance." United States v. Soto-Silva,129 F.3d 340, 345 (5th Cir. 1997) (citing United States v. McKinney, 53 F.3d 664, 676-77 (5th Cir. 1995)). The evidence at trial must raise two inferences: (1) the defendant was subjectively aware of a high probability of the existence of the illegal conduct; and (2) the defendant purposely contrived to avoid learning of the illegal conduct. Soto-Silva, 129 F.3d at 345 (citing United States v. Ojebode, 957 F.2d 1218, 1229 (5th Cir. 1992)).

We hold the government presented sufficient evidence to support the deliberate ignorance instruction. The Defendants claimed a lack of guilty knowledge, and the evidence presented at trial warrants the inference of deliberate ignorance. All three Defendants claimed they relied on others concerning the Maryland Trust's ownership and the existence of the treasury notes. Ben-Schoter told Secret Service Agent Tim Gobble he relied on Owen and Don Meddles assurances that the Maryland Trust had millions of dollars in assets in Chemical Bank, that the Nevada Trust had the Maryland Trust's permission to use the treasury notes, and that the treasury notes existed at all. Mr. Scott told Agent Gobble he relied on Ben-Schoter's assurances, and Mrs. Scott told Agent Gobble she relied on Ben-Schoter and Mr. Scott for the same issues. Although the Defendants did not testify at trial, their statements to Agent Gobble and their attorneys' opening and closing aruguments support the conclusion they asserted lack of guilty knowledge in these transactions.

There is also sufficient evidence allowing a reasonable inference of deliberate ignorance for

7

all the Defendants. The following evidence establishes that the Defendants were subjectively aware of a high probability of the existence of the illegal conduct : (1) Ben-Schoter was imprisoned for contempt in a previous lawsuit for failure to produce notes involved in similar transactions with the Maryland Trust, and both Mr. and Mrs. Scott were aware of his involvement; (2) a Dun & Bradstreet report revealed the assets of the Maryland Trust were merely $5260.00 in cash; (3) Mr. Scott was told he would have to sue to get the identification number for the treasury notes when Laverne Shiflett attempted to collect on the notes as collateral; and (4) Mrs. Scott signed 112 documents involving millions of dollars of treasury notes while they were having trouble paying their household bills.

Additionally, the following evidence establishes the Defendants purposefully contrived to avoid learning of the illegal conduct: (1) the Defendants never attempted to verify the existence of the treasury notes or the millions of dollars of assets in Chemical Bank; (2) the Defendants never attempted to verify the existence of the treasury notes with a Federal Reserve Bank; (3) and Mrs. Scott never questioned anyone conerning her signature required on 112 documents involving millions of dollars in treasury notes.

2. Objections to Deliberate Ignorance Made on Appeal

The remaining grounds are analyzed using a plain error standard because the Defendants did not raise them below. We may correct forfeited errors only when the appellant shows (1) there is an error, (2) it is clear or obvious, and (3) it affects his substantial rights. See Fed. R. Crim. P. 52(b); see also United States v. Calverley, 37 F.3d 160, 162-64 (5th Cir. 1994) (en banc) (citing United States v. Olano, 507 U.S. 725, 730-37 (1993)). Even when these three factors are present, the decision whether to correct the forfeited error remains with the sound discretion of the appellate court, which will not exercise that discretion unless the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. United States v. Hawkins, 87 F.3d 722, 730 (5th Cir. 1996) (citing Olano, 507 U.S. at 735-36).

8

a. Placement of the Instruction

The Defendants argue the instruction was error because of its placement immediately before the definition of "willfully", requiring the defendant to have acted with the specific purpose to disobey the law, and immediately after the requirement of the necessary intent to defraud. They argue the placement of the instruction allowed the jury to infer not only knowledge, but intent. The Defendants' argument fails for two reasons. First, we find no cases, and the Defendants cite none, which hold it is error to place a deliberate ignorance instruction as it was in the instant case. Thus, it was not plain error to arrange the instruction in that manner.

Second, while we recognize that the deliberate ignorance instruction can create the risk that a jury might convict the defendant on a lesser negligence standard, this risk is not present in the instant case. See United States v. Gray, 105 F.3d 956, 957 (5th Cir. 1997); see also United States v. Lara-Velasquez, 919 F.2d 946, 951 (5th Cir. 1990). The instruction is appropriate despite this risk when the evidence satisfies the McKinney two-pronged standard. Because we find the evidence meets this standard, the instruction was proper.

b. Knowledge and Specific Intent Requirements

The Defendants also argue the instruction was improper because all of the crimes they are convicted of require that the defendant act knowingly and with specific intent or purpose.[4] The Defendants rely on United States v. Chen, 913 F.2d 183 (5th Cir. 1990), where the court held "one cannot be deliberately ignorant (in order to convict for the knowledge element) and still have the purpose of engaging in illegal activities," therefore "the [deliberate ignorance] instruction was inappropriate for an offense which requires a specific purpose by the defendant." Id. at 190.

---

[4]The crime of transferring counterfeit securities or obligations of the United States requires the intent to cheat; bank fraud requires the intent to defraud; inter state travel in furtherance of a scheme requires the defendant to have devised a scheme to defraud and act in execution of that scheme; wire fraud requires an intent to defraud; money laundering requires the intent to promote the specified unlawful activity; conspiracy requires the intent to further the object of the conspiracy.

9

The government argues the instruction was proper relying on Unites States v. Investment Enterprises, Inc., 10 F.3d 263 (5th Cir. 1993). There, the court concluded the instruction serves to inform the jury of ignorance as circumstantial proof of guilty knowledge. Id. at 269. The court considered the deliberate ignorance instruction a particularized circumstantial evidence instruction. "To the extent that the instruction is merely a way of allowing the jury to arrive at the conclusion the defendant knew the unlawful purpose of the conspiracy, it is hardly inconsistent with a finding that the defendant intended to further the unlawful purpose." Id.

Chen held only that the instruction is error when given for § 856(a)(1).[5] This case does not involve a violation of § 856(a)(1). Additionally, the court in Chen acknowledged that the requirement of specific intent or specific purpose in a statute does not necessarily prevent a deliberate ignorance charge. Chen, 913 F.2d at 192 n. 11. We have consistently held the deliberate ignorance instruction is proper when supported by sufficient evidence, including when used with many of the crimes of which the Defendants are convicted.[6] Even assuming the district court did err in giving the instruction, it was harmless error because the government presented sufficient evidence of actual knowledge to satisfy the knowledge and specific intent requirements for all of the Defendants. See United States v. Soto-Silva, 129 F.3d 340, 345 (5th Cir. 1997). Because we conclude the district court did not err in giving the instruction, the Defendants' argument fails the plain error analysis.

c. Actual Knowledge

_____

[5]Section 856(1)(a) makes it unlawful to knowingly open or maintain any place for the purpose of manufacturing, distributing, or using any controlled substance. 21 U.S.C.A § 856(1)(a) (West Supp. 1998)

[6] See United States v. Gray, 105 F.3d 956 (5th Cir. 1997) (mail fraud, conspiracy); see also United States v. McKinney, 53 F.3d 664 (5th Cir. 1995) (conspiracy); see also United States v. Cavin, 39 F.3d 1299 (5th Cir. 1994) (conspiracy); see also United States v. Faulkner, 17 F.3d 745 (5th Cir. 1994) (conspiracy, wire fraud, and RICO charges); see also United States v. Wisenbaker, 14 F.3d 1022 (5th Cir. 1994) (tax evasion); see also United States v. Breque, 964 F.2d 381 (5th Cir. 1992) (conspiracy); see also United States v. Fuller, 974 F.2d 1474 (5th Cir. 1992) (conspiracy, money laundering).

Finally, the Defendants argue the district court erred in giving the instruction because the government presented evidence of actual knowledge. This argument has no merit and fails the plain error review. Chen held "even if the government's case was actual knowledge, the defendant's testimony raised the issue of deliberate ignorance. Needless to say, the court is required to 'instruct the jury on all aspects of a case in order for them to reach a fair and proper verdict.'" Chen, 913 F.2d at 192 (quoting United States v. Leon, 679 F.2d 534, 541 (5th Cir. 1982)). For the foregoing reasons, we find the district court did not err in giving the deliberate ignorance instruction.

C. Ineffective Assistance of Counsel

The Defendants argue they were denied effective assistance of counsel because Mrs. Scott's attorney did not introduce evidence concerning forgery of her signature, and all of the Defendants' attorneys did not challenge the government's evidence that Citibank, London, England was insured by the FDIC.

Ordinarily, we do not review a claim of ineffective assistance of counsel on direct appeal unless the district court has addressed it. See United States v. Rosalez-Orozco, 8 F.3d 198, 199 (5th Cir. 1993); see also United States v. Armendariz-Mata, 949 F.2d 151, 156 (5th Cir. 1991). We will only determine the merits of the claim on direct appeal when the record is sufficiently developed. United States v. Freeze, 707 F.2d 132, 138 (5th Cir. 1983). "This is not merely a procedural technicality. Unless the district court has developed a record on the defendant's allegations, we cannot fairly evaluate the merits of the claim." United States v. Bounds, 943 F.2d 541, 544 (5th Cir. 1991).[7]

We decline to review this claim because the Defendants did not adequately raise this issue before the district court. Prior to trial, Mr. Scott wrote a letter to his attorney and the district court

[7]Our decision not to review the Defendants' claims of ineffective assistance of counsel does not prejudice their right to raise the issue in a habeas corpus proceeding. See 28 U.S.C.A § 2255 (1994); see also United States v. Ugalde, 861 F.2d 802, 804 (5th Cir. 1988).

11

judge expressing his dissatisfaction with his attorney and requesting his attorney's removal. The district court judge briefly questioned Mr. Scott about his concerns and determined his dissatisfaction was largely due to a personal dispute rather than ineffective representation. The record is insufficient for review because it only contains this brief questioning by the judge and contains no discussion of the issues raised on appeal regarding ineffective assistance of counsel.

The only other attempt to raise this issue below was by Mrs. Scott in her Motion for New Trial based on the discovery of new evidence. The Defendants argue in their briefs that ineffective assistance was raised in the district court because Mrs. Scott's Motion for New Trial was based on both grounds of discovery of new evidence and ineffective assistance of counsel. Her motion in the record only addresses the discovery of new evidence. However, in her Reply to the Government's Response to Motion for New Trial, Mrs. Scott stated, "[t]he information gathered after trial is either newly discovered evidence or evidence of ineffective assistance of counsel." She stated further, "[t]his approach was also strategically chosen to avoid the seven day deadline under Rule 33." Mrs. Scott's motion did not raise the issue of ineffective assistance of counsel, because even if her initial motion had raised the issue, her motion was untimely. A motion for new trial based on any other grounds than newly discovered evidence must be made within seven days after verdict or finding of guilty. Fed. R. Crim. P. 33. Mrs. Scott moved for a new trial on April 1, 1997, almost one year after her guilty verdict was returned on June 12, 1996. "In this circuit, a Rule 33 motion, filed more than seven days after the verdict and premised on 'newly discovered evidence,' is an improper vehicle for raising a claim of ineffective assistance of counsel." United States v. Medina, 118 F.3d 371, 372 (5th Cir. 1997) (citing United States v. Ugalde, 861 F.2d 802, 807-09 (5th Cir. 1988)). We decline to review this issue because the Defendants failed to adequately raise it at the district court level.

D. Denial of Challenges for Cause

The Defendants argue the district court abused its discretion in denying their challenges for

12

cause to excuse four prospective jurors. A prospective juror may be excluded for cause where his or her views would prevent or substantially impair the performance of his or her duties as a juror in accordance with his or her instructions and oath. Wainwright v. Witt, 469 U.S. 412, 423 (1985); Nethery v. Collins, 993 F.2d 1154, 1160 (5th Cir. 1993). The Defendants must show the district court's conclusion that the prospective jurors in question could perform their duties as jurors was manifest error. See United States v. Dozier, 672 F.2d 531, 547 (5th Cir. 1982).

Two of the prospective jurors in question indicated they would draw negative inferences from a defendant's failure to testify. Upon questioning and instruction by the court, however, both prospective jurors indicated they would be able to put aside such inferences and consider only the evidence presented by the government. Accordingly, the district court did not err in denying the Defendants' challenge for cause. Id. at 549 (district court did not err in denying challenge for cause where prospective juror agreed to put aside prior impressions as far as "humanly possible").

Two other prospective jurors indicated that they would tend to believe the testimony of a government agent. Upon questioning by the court, one of the prospective jurors, Mr. Cook, acknowledged that he did not believe someone else would be less likely to tell the truth. The other prospective juror, Mrs. Petrowski, stated she would try to set aside her bias. Such a promise is all that can be required of a juror. Id. ("We can ask no more of those who must assume, for the duration of a trial, the almost superhuman posture of complete impartiality."). Thus, the district court did not err in denying the Defendants' challenges for cause as to these prospective jurors.

E. Sentencing Guideline Issues

The Defendants make several arguments concerning the propriety of their sentences under the guidelines. Because we reverse the Defendants' convictions for transfer of false obligations of the United States under 18 U.S.C.A. § 473 and vacate their sentences, we remand this case to the district court for resentencing consistent with their remaining convictions and do not reach the Defendants' arguments concerning the sentencing guidelines.

13

## III.  CONCLUSION

For the foregoing reasons, we reverse the Defendants' conviction for the false transfer of obligations of the Untied States under 18 U.S.C.A. § 473, affirm the remaining convictions and remand to the district court for resentencing.

AFFIRMED  in part; REVERSED in part and REMANDED.