HAYNES, Circuit Judge,
concurring in part and dissenting in part:
I generally concur in the majority’s opinion with one exception. I agree with the majority’s conclusion that the evidence supports a finding that Porter completed the crime of conspiracy at the Horton home, well before and independent of the events that occurred at Wal-Mart. For the reasons set forth below, I respectfully dissent from the portion of the majority’s opinion affirming the district court’s jury instruction on the definition of “counterfeit.”
The majority correctly notes that the essence of a conspiracy is the agreement. This conclusion, however, begs the question of “an agreement to do what?” Porter had to agree to pass counterfeit bills, not just to commit simple theft.[1] Porter argued at trial that because she agreed to accept at her cash register $100 bills incapable of deceiving an honest, sensible, and unsuspecting person, the bills were not by definition “counterfeit.” Thus, according to her, even though Porter conspired to pass fake $100 bills, she did not conspire to pass counterfeit bills. By refusing to instruct the jury using Porter’s definition of counterfeit, Porter argues that the district court denied her the opportunity to present her main defense to the jury. The Government argues that the similitude of the money is irrelevant to the crime of conspiracy, was not an issue in Porter’s case, and therefore required no more instruction to the jury than what was given.
The majority opinion correctly states the standard of review for jury instructions. A district court abuses its discretion in denying a requested instruction if the instruction: (1) was a substantively correct statement of the law, (2) was not substantially covered in the charge as a whole, and *1096 (3) concerned an important point in the trial such that the failure to instruct the jury on the issue seriously impaired the defendant’s ability to present a given defense. United States v. Jobe, 101 F.3d 1046, 1059 (5th Cir.1996). However, a judge has no discretion in determining the law, so whether the jury was properly instructed is a question of law this court reviews de novo. See United States v. Guidry, 406 F.3d 314, 321 (5th Cir.2005).

1. Porter’s proffered instruction was a correct statement of the law.

In United States v. Scott, 159 F.3d 916 (5th Cir.1998), this court held that a note is counterfeit if it
bears such a likeness or resemblance to any of the genuine obligations or securities issued under the authority of the United States as is calculated to deceive an honest, sensible and unsuspecting person of ordinary observation and care dealing with a person who is supposed to be upright and honest.
Scott, 159 F.3d at 920-21. Porter’s proffered instruction mirrored this court’s definition of “counterfeit obligation” in Scott. See id. As the Government points out on appeal, Scott defined “counterfeit” for purposes of 18 U.S.C. § 473 (2001), which criminalizes the transfer of counterfeit obligations or securities. The Government gives no reason for defining the word “counterfeit” differently in section 473 than in the almost identical sections at issue here — sections 471 and 472. The majority, however, does attempt to explain why Scott’s definition of “counterfeit” is exclusively applicable to section 473:
The difference between the intent required to violate § 473 and that required to violate §§ 471 and 472 is mirrored in the difference between the required level of similarity of the bogus bills to the genuine ones for the different object crimes.... [T]o pass, publish, or use false obligations with the level of intent required under § 473, viz., the specific intent that they be perceived by the recipient “as true and genuine,” requires that the phony bills have a substantially greater level or degree of similitude to the genuine article.
Thus, the majority suggests that the three sections’ different intent requirements justify the district court’s use of a “counterfeit” definition other than the one articulated by this court in Scott.
The majority’s distinction is problematic in two respects. First, section 473 requires an intent to pass false obligations as “true and genuine,” whereas sections 471 and 472 require “an intent to defraud.” This slight difference in the intent requirement might necessitate a different instruction on intent,[2] but it does not change the meaning of the word “counterfeit.”[3]
Second, the majority cites no opinion, in this circuit or any other, which states that the definition of “counterfeit” is different among sections 471, 472, and 473. This court in Scott, when defining “counterfeit” for purposes of section 473, cited a case which in turn relied on a Fourth Circuit case defining “counterfeit” for purposes of section 472, one of the very sections at issue here. Scott, 159 F.3d at 920-21 (citing United States v. Turner, 586 F.2d 395, 397 (5th Cir.1978) (citing United States v. Smith, 318 F.2d 94, 95 (4th Cir.1963))). Not even the Fifth Circuit Pattern Jury Instructions, upon which the majority relies to find that the district judge did not abuse his discretion, purport to limit Scott’s definition of “counterfeit” to jury *1097 instructions only pertaining to section 473. Instead, they explicitly suggest using Scott’s definition for jury instructions pertaining to either section 471 or 472.[4] Indeed, the majority’s distinction puts our circuit at odds with our sister circuits that have defined “counterfeit” for purposes of sections 471 and 472 just as our court defined the term in Scott.[5]
In sum, to the extent that the majority contends Scott’s definition of counterfeit exclusively applies to section 473, I respectfully disagree.

2. Porter’s proffered instruction was not substantially covered in the charge as a whole.

The majority holds that the proffered instruction was substantially covered in the given charge. Simply by looking at the given instruction on the general meaning of “counterfeit” and the rest of the charge as a whole, it is clear that Porter’s proffered instruction was not substantially covered. Porter’s instruction articulated a specific standard under which the jury could determine if the fake bills contemplated to be used by the alleged conspirators appeared sufficiently genuine to be counterfeit. Specifically, Porter’s instruction would have limited counterfeit obligations to include only those bills so similar to genuine currency as to deceive an honest, sensible and unsuspecting person.[6] But the district court instructed the jury that to be counterfeit, a Federal Reserve note must simply have a likeness or resemblance to genuine currency.[7] Neither the district court’s definition nor any other portion of its jury charge instructed the jury to what degree, if any, the fake bills had to resemble real money.

3. Porter’s proffered instruction concerned an important point in the trial such that the district court’s denial seriously impaired Porter’s ability to present her defense.

The very experienced and capable district judge in this case intentionally limited *1098 the amount of attention the jury charge gave to the object crimes’ counterfeit elements so that the jury would remain focused on the sole conspiracy charge that was the subject of Porter’s trial. But he nonetheless chose to provide an explanation of the term “counterfeit.” The problem here is that the district court’s instruction overlooked an important distinction. Because Porter was tried only for conspiracy, the Government argues that an instruction correctly defining the word “counterfeit” did not concern an important point of the trial, and nothing more than a general description of the term was required.
Yet the essence of a conspiracy is the agreement to commit a particular crime. United States v. Jimenez Recio, 537 U.S. 270, 274, 123 S.Ct. 819, 154 L.Ed.2d 744 (2003); see also United States v. Binetti, 552 F.2d 1141, 1142 (5th Cir.1977) (reversing a defendant’s conviction for conspiracy to possess and distribute cocaine when the defendant did not conspire to sell cocaine, but rather a harmless, lawful substance that looked like cocaine). It is part of the Government’s burden to prove that “ ‘the intended future conduct [the conspirators] agreed upon includes all the elements of the substantive crime.’ ” United States v. Pinckney, 85 F.3d 4, 8 (2d Cir.1996) (quoting United States v. Rose, 590 F.2d 232, 235 (7th Cir.1978)); see also United States v. Foote, 413 F.3d 1240, 1250 (10th Cir.2005); United States v. Warshawsky, 20 F.3d 204, 209 (6th Cir.1994); United States v. Vaglica, 720 F.2d 388, 391 (5th Cir.1983) (explaining that while failure to instruct on the substantive elements of the object crimes is not always plain error, such an omission by the trial court does constitute a serious error when a defendant raises a question as to the elements of the substantive crime that was the object of the conspiracy).
In 99 out of 100 cases, the distinction between the “likeness” definition given and the “calculated to deceive an honest person” definition requested and refused, would be a distinction without a difference. Here it is not. Erica Horton testified on cross-examination to a day-by-day breakdown of the conspiracy. She explained that on Day 1, Carlos came to her home and made the fake $20 bills. On Day 2, Carlos came to her house and made the fake $100 bills, finished and left. After he left, Porter came over, Horton showed her the finished $100 bill, and Porter said “Yeah, this will work.” This is the evidence suggesting Porter agreed to pass a specific fake bill, one that she had seen, one that she was familiar with, and one that either did or did not meet the definition of “counterfeit.” Consequently, whether this specific fake bill (either itself or as an exemplar of the fake bills intended to be used) was counterfeit is relevant as to whether Porter conspired to pass a counterfeit bill. These bills were color copies of the front and back of actual bills; they undoubtedly had a “resemblance” to real money. But arguably they did not feel like real money and were, therefore, not sufficiently real to deceive someone.
Even with Porter’s proffered jury instruction, a reasonable jury could still find that she conspired to pass counterfeit money, which is why I concur in the conclusion that sufficient evidence supported a verdict of guilty. But with Porter’s jury instruction, a reasonable jury could also find to the contrary — that the specific bills she agreed to pass were not sufficiently real to qualify as counterfeit. At the very least, the jury could have a reasonable doubt. For this reason, the district court should have given Porter’s proffered instruction, and its failure to do so seriously impaired her ability to present her defense to the jury.
*1099 Accordingly, I respectfully dissent as to the portion of the majority’s opinion finding that the district court’s jury charge defining the term “counterfeit” did not constitute an abuse of discretion by the district court. I would reverse and remand for a new trial.

. This distinction is important because not every crime involving money is a federal crime. Undoubtedly, Porter conspired to commit theft, but that charge belongs in state, not federal, court.

. Intent focuses on the defendant's subjective mental state. Whether a fake bill could actually deceive an unsuspecting, honest person, on the other hand, is an objective inquiry.

. It is worth noting that the district judge never purported to base his ruling on the different intent requirements articulated by sections 471, 472, and 473.

.The Fifth Circuit Pattern Jury Instructions also reference the Ninth Circuit Pattern Jury Instructions which are the source of the "likeness" language used by the district court. Pattern jury instructions are not law, and the Ninth Circuit pattern instructions cite no law in support of the “likeness” language. See United States v. Williams, 20 F.3d 125, 132 (5th Cir.1994) (providing that while the Pattern Jury Instructions provide a useful guide for the district courts, they are not law). Even the Ninth Circuit itself uses Porter’s definition, not the one suggested by the Ninth Circuit Pattern Jury Instructions. United States v. Johnson, 434 F.2d 827, 829 (9th Cir.1970). Interestingly, neither the Fifth nor the Ninth Circuit’s Pattern Jury Instructions suggest that section 473 should be handled differently from sections 471 and 472. The only implication to be derived from the Fifth Circuit Pattern Jury Instructions is that its authors thought that section 473 was sufficiently similar to serve as a blueprint for defining “counterfeit" in jury instructions pertaining to sections 471 and 472.

. See, e.g., United States v. Mousli, 511 F.3d 7, 15 (1st Cir.2007); United States v. Taftsiou, 144 F.3d 287, 291 (3d Cir.1998); United States v. Wethington, 141 F.3d 284, 287 (6th Cir.1998); United States v. Ross, 844 F.2d 187, 189 (4th Cir.1988); United States v. Cantwell, 806 F.2d 1463, 1471 (10th Cir.1986); United States v. Hall, 801 F.2d 356, 357-58 (8th Cir.1986); United States v. Brunson, 657 F.2d 110, 114 (7th Cir.1981); United States v. Johnson, 434 F.2d 827, 829 (9th Cir.1970).

. Porter’s requested instruction stated:
A bill is counterfeit only if it possesses similitude: it bears such a likeness or resemblance to genuine currency as is calculated to deceive an honest, sensible and unsuspecting person of ordinary observation and care when dealing with a person supposed to be upright and honest.

. The pertinent portion of the jury charge stated only: “To be counterfeit, a Federal Reserve note must have a likeness or resemblance to genuine currency.”